Argued April 4, decided April 25, rehearing denied May 16, 1911.

## DOSE v. BANK OF WOODBURN.

[115 Pac. 286.]

JUDGMENT—PAYMENT—PRIMA FACIE EVIDENCE—INDORSEMENT.

1. The indorsement by the judgment creditor on the judgment docket of a certain sum as paid is only *prima facie* evidence of payment.

CHATTEL MORTGAGES—MORTGAGES—AMOUNT SECURED—EVIDENCE.

2. Evidence in a suit to have a bill of sale and a deed declared mortgages, and defendant required to reconvey the property, *held* to show they were given as security for all of plaintiff's debt to defendant, and not for part of it only.

From Marion:    WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Fred Dose against the Bank of Woodburn and J. M. Poorman to have a bill of sale and a deed declared to be mortgages, and to require defendants to convey to plaintiff the property therein described.

At the time of the various transactions, the plaintiff, Fred Dose, was doing business as a produce broker at Woodburn, Oregon, and defendant the Bank of Woodburn, a corporation, was conducting a general banking business at the same place. On November 5, 1902, Dose, being indebted to the bank, executed thereto a bill of sale of his Woodburn warehouse property, consisting of the warehouse, engine house, engine, boiler, and all machinery, scales, trucks, scoops, and safe. On October 15, 1905, Dose purchased from D. A. McKee and wife the following described property, the deed to which he caused to be executed to defendant J. M. Poorman, for

the benefit of the Bank of Woodburn, of which Poorman was cashier, viz:

"Beginning at a point on the west boundary of the right of way of S. P. R. R., which point is southerly from the intersection of said east boundary with the center of the county road at McKees Station, 15 rods and 10 feet; thence southerly along the west boundary 90 feet; thence westerly at right angles to said west boundary 42 feet; thence northerly parallel with said west boundary 90 feet; thence easterly at right angles to said west boundary 42 feet to the place of beginning, containing 2,700 square feet of land. Also a right of roadway over a strip three rods wide from the southerly line of the above described premises, and parallel with said right of way to said county road, situated in Section 34, Twp. 5 S., range 1 W., W. M., Marion County, State of Oregon."

It is alleged by plaintiff that this conveyance was made to secure to the bank the payment of an overdraft of $1,600 with interest thereon. Defendants assert that the conveyance was executed for the purpose of securing all the indebtedness of plaintiff to the bank; the different amounts being $1,600 and $128 rent or interest thereon, due September 1, 1909, which is not disputed; $40 insurance; and $1,500, with interest at eight per cent per annum from the 4th day of April, 1909, being a part of a judgment of $3,986.40 and interest, rendered October 5, 1903, in favor of the bank against plaintiff and his former partner, one Charles Scott. Upon this judgment there was afterwards collected on execution against the property of Charles Scott the sum of $1,888.30.                                    MODIFIED.

For appellant there was a brief over the names of *Mr. Peter H. D'Arcy* and *Mr. George G. Bingham,* with an oral argument by *Mr. D'Arcy.*

For respondent there was a brief and an oral argument by *Mr. Grant Corby.*

MR. JUSTICE BEAN delivered the opinion of the court.

The real controversy, and the only question for determination in this suit, is the amount for which the property was conveyed as security. It appears that about the first of the year 1909 the bank endeavored to obtain a settlement of the judgment, proposing to take therefor three separate notes of $500 each, signed by plaintiff and his wife, which were to be indorsed upon the judgment. Plaintiff, learning the intention of the bank to assign the balance of the judgment, refused to give the notes, and negotiations in regard thereto were ended, and nothing further done, except that $1,500 was indorsed upon the judgment as paid, and the balance of the judgment assigned to one John Scott.

Regarding conveyance of the property by defendants to plaintiff, which transaction is briefly described by both Dose and Poorman, plaintiff testifies that the bank would convey to him when he "had no debts with the bank," and that he caused the McKee property to be conveyed to Poorman in trust for the bank, "in order to secure the bank fully."

Defendant Poorman testifies that the first bill of sale of November 5, 1902, was to secure an overdraft of $1,600; that, in fact, the property was security for the whole amount owed by plaintiff; and that they finally came to an agreement to settle on $1,500, the amount to be paid upon the judgment by plaintiff. This agreement, however, was not consummated.

"Whenever Mr. Dose and I would talk over the settlement, he would always say: 'You have the two warehouses, what more security do you want? You have all the security you want.' Whenever I would ask him to give something bankable—we would like to see a little money once in a while—he would always talk as though it was our property, only he could get it back by paying the sum that might be agreed on."

It appears from the notice served by plaintiff, Dose, upon defendants, prior to the commencement of this suit, that Dose offered to pay to the bank the sum of $1,728, the amount of his "total indebtedness to the Bank of Woodburn." Plaintiff also testifies:

"If I paid the $1,500, the warehouse at McKee would be reconveyed to me or my wife. I could take the Woodburn warehouse back at any time as soon as I paid the $1,600 and the interest on it."

Much of the testimony relates to the negotiations for settlement between the bank and plaintiff during the first part of the year of 1909. As that transaction was not completed, all of such matter may be eliminated from the case. The judgment between plaintiff and defendants must be considered as though there were no such negotiations; but this does not release plaintiff from payment of his debt. There was no question in regard to the amount due on the judgment. It is clear that there was no sale or assignment of $1,500 thereof by the bank to John Scott, and that this amount has not been paid by Dose.

1. The indorsement by the bank upon the judgment docket is only *prima facie* evidence of payment. As both parties testify the $1,500 was never paid, and the notes in contemplation of being given therefor were never executed. In regard to that there can be no question. The credit upon the judgment would serve for the purpose of showing that this amount was not assigned to John Scott. From the evidence, however, it appears that it was well understood by the assignee of the judgment that the $1,500 was not to be sold or assigned by the bank. But the interest of John Scott therein is not involved in this suit.

Plaintiff contended that Charles Scott, his former partner, should pay the judgment, and no doubt Charles Scott was morally and legally bound so to do. Neverthe-

less there can be no question but that plaintiff was also morally and legally responsible for such payment. Plaintiff Dose is a business man, and, undoubtedly when he testified that it was understood that when he "had no debts with the bank" it would reconvey the property to him, he knew that, before he would be entitled to a reconveyance of the property in question, he must liquidate all his indebtedness to the bank.

It appears that the bank was carrying Dose during all these years, and it is not easy to comprehend that it would take from him, and hold for so long a time, security for the payment of less than the whole amount of his indebtedness, if such security was sufficient therefor.

2. From a consideration of all of the testimony it is evident that the property is held by defendants subject to the payment of the $1,500 and interest, as well as the $1,600 and interest.

The decree of the lower court will be modified, so as to require the defendants to convey the property described herein to plaintiff upon the payment, within sixty days from the entry of this decree in the circuit court, of the following sums: $1,600, with interest at eight per cent per annum from September 1, 1908; $1,500, with interest at eight per cent per annum from April 4, 1909. And in the event of defendants' failure to so convey such property, upon plaintiff depositing said amounts with the clerk of the circuit court, such decree shall stand as and for a conveyance of the property. In the event of plaintiff's failure to so make such payments, the property shall be sold upon execution to satisfy the same.    MODIFIED.