Motion to dismiss appeal denied January 30, order denying motion to dismiss appeal sustained February 20, argued on the merits July 12, modified September 25, rehearing denied November 7, 1923.

## J. C. CORBIN CO. *v.* PRESTON ET AL.

(212 Pac. 541; 218 Pac. 917.)

**Appeal and Error—Record Only Considered on Motion to Dismiss.**

1. The court in passing on a motion to dismiss an appeal will be governed entirely by the record.

**Appeal and Error—Justification of Sureties on Undertaking to be Evidenced by Indorsement or Written Memorandum.**

2. Under Section 550, subdivisions 3 and 4, Or. L., providing for exceptions to sureties on appeal and their justification, and Sections 270 and 271, providing for the justification of bail and allowance, the justification of the sureties upon an undertaking on appeal should be evidenced by an indorsement on the undertaking by the judge or clerk or by some written memorandum indicating that the undertaking is approved.

**Appeal and Error—Justification of Sureties Evidenced by Indorsement or Order of Court.**

3. The order of the court allowing the undertaking on appeal after the sureties were required to justify stands in place of an indorsement thereon required by Section 271, Or. L., and an order of court approving the undertaking is sufficient evidence of its allowance.

**Appeal and Error—Time Within Which to File Transcript Runs from Approval of Undertaking.**

4. Under Section 270, Or. L., providing that an appeal shall be deemed perfected from the expiration of the time allowed to except to the sureties in the undertaking, or from the justification thereof if excepted to, the time within which to file transcript did not begin to run after the examination of one surety had been completed, reduced to writing, signed, and until after the order of the judge approving the undertaking; the fact that justification of the other surety was waived not obviating the necessity of some record of the court's allowance of the undertaking.

**Fraud—Predictions of Future Conduct of Third Persons not Actionable.**

5. Actionable fraud cannot be based on erroneous predictions of future conduct of independent third parties.

**Fraud—Purchaser of Lease not Entitled to Rely on Representations Contrary to Lease.**

6. One purchasing interest of lessee under a written lease had no right to rely on representations or promises of the lessee, if made, that lessor would assume liabilities or grant privileges not provided for in the instrument, such as the making of repairs.

Fraud—Evidence Held to Show No Fraud on Part of Seller of Lease
and Furniture Respecting Inspection of Premises.

7.   Evidence held, to show that purchasers of lease and furniture
of apartment house made such examination and inspection as to
adequately inform them of physical condition of the several apart-
ments, and that seller made no effort to keep them from inspecting
other apartments.

Fraud—Representations by Seller as to Past Profits Actionable.

8.   Representations by seller of lease and furniture of apartment
house concerning her past income or profits were material, and when
intended to influence the sale, and an important element in in-
ducing it, would support a recovery of damages.

Fraud—Recovery not Defeated Because Buyer Did not Inspect
Books, Instead of Relying on Seller's Statements.

9.   Where seller of lease and furniture of apartment house mis-
represented her past income or profits, recovery was not defeated
because the buyer, instead of relying on such representations, did
not ask for inspection of the seller's books and accounts.

Fraud—Seller, Making Positive Assertion, must Speak Truth.

10.   Where vendor makes statement concerning matters suscep-
tible of accurate knowledge and in the form of a positive assertion,
he is required to speak the truth, especially where evidence of the
truth is contained in his own books of account.

Setoff and Counterclaim—Defendant Entitled to have Note and
Chattel Mortgage Reduced by Amount of Damages from Fraud.

11.   In replevin by assignee of purchase-money note and chattel
mortgage to recover the property for purpose of foreclosure, in
which defendants alleged fraud, they are entitled to have amount
of note reduced to the extent of their damages from false repre-
sentations shown to have been made.

Fraud—How Damages from Misrepresentation on Sale of Lease as
to Profits Determined.

12.   Where seller of lease and furniture of apartment house rep-
resented that her profits were approximately $100 a month more
than they actually were, and there was no evidence of difference
between selling price and actual reasonable market value, the dam-
ages must be determined by taking into consideration the unexpired
term of the lease, the discrepancy in the profits, and the unre-
liability of evidence of past profits in determining value.

Chattel Mortgages—Mortgagee Entitled to Possession of Property
for Purpose of Foreclosure.

13.   Assignee of purchase-money note and chattel mortgage was
entitled after default to possession of the property to enable him

---

7.   Right to rely on representations of obvious facts, or facts of
which the defrauded party has knowledge, see note in 37 L. R. A.
595.

8.   What amounts to false representation of existing fact, see note
in 1 Ann. Cas. 980.

to foreclose the mortgage and apply proceeds in satisfaction of amount due after crediting thereon damages recovered by buyer for fraud.

**Chattel Mortgages—Provision of Decree as in Case of Strict Foreclosure Erroneous.**

14. In view of Section 10184, Or. L., requiring foreclosure of mortgage as therein provided, and fact that chattel mortgagee has only a lien, strict foreclosure cannot be granted, and provision of decree that on payment within thirty days defendants may purchase the mortgaged property, and otherwise that all their right, title, and interest shall cease and determine, is erroneous.

**Appeal and Error—Defendants cannot Complain of Provision of Foreclosure Decree Which Did not Affect Their Rights.**

15. Where provision of decree foreclosing chattel mortgage, such as would be proper upon strict foreclosure did not affect defendants' rights, except to suspend plaintiff's right to proceed for thirty days, defendants have no valid ground of complaint.

From Multnomah: WALTER H. EVANS, Judge.

MOTION TO DISMISS APPEAL DENIED.

*Messrs. Winter & Maguire,* for the motion.

*Mr. L. B. Sandblast* and *Mr. J. LeRoy Smith, contra.*

BEAN, J.—Respondent moved to dismiss the appeal in this cause for the reason that the appellants failed to file a transcript of the record within the time allowed by law. Since the ruling upon the motion, a brief on behalf of respondent has been filed. We therefore give the matter further consideration, and make a memorandum of our determination.

It appears from the record that the decree herein was rendered on May 16, 1922. Defendants served a notice of appeal which was filed on July 14, 1922. On the 17th of that month exceptions to the sufficiency of the sureties on the undertaking on appeal were filed by respondent. On July 19, 1922, George C. Ulrich, one of the sureties on the undertaking, appeared before the judge to justify as to his qualifica-

tions as such surety. He was examined by Mr.
Normal Kuykendall, an associate or member of the
firm of Winter & Maguire, attorneys for respondent;
after which plaintiff by his counsel orally waived
further examination of either surety.  No record was
made of the proceedings pertaining to the justifica-
tion until October 7, 1922.  On the latter date, on
motion of the plaintiff for an order *nunc pro tunc* to
be entered as of July 19, 1922, allowing the undertak-
ing on appeal, and upon the motion of defendants for
entry of such order as of that date, October 7, 1922,
the court denied the motion for a *nunc pro tunc* entry
and approved the undertaking by the following order:

"It is Ordered and Adjudged, that said bond and
undertaking be and the same is hereby allowed as of
this date instead of the 19th day of July, 1922, the
date of the actual allowance thereof."

1. It is indicated by the order made by the court, and
by the briefs of counsel, that after the examination of
one of the sureties there was a misunderstanding or
"controversy" between the parties which the court
did not pass upon.  It is claimed in the brief on be-
half of appellants that a printed form of inquiry was
demanded by counsel for respondent, other than the
one appearing at the time of the examination of the
surety, to be executed by the surety, after July 19,
1922.  As we view the matter, what occurred in rela-
tion to the surety after the date mentioned is imma-
terial, as this court in passing upon a motion to dis-
miss an appeal will be governed entirely by the
record: *Boise-Payette Lumber Co.* v. *Dominican
Sisters,* 102 Or. 314 (202 Pac. 554).  On November
6, 1922, the time for filing the transcript was, by
order of the trial court, extended until and including
November 20, 1922.  On the date last mentioned such

time was so extended to and including November 25, 1922. On the latter date the transcript of record was filed in this court. The question for consideration is: When did the time of thirty days for filing the transcript as provided in Section 554, Or. L., begin to run? If the date of the justification of the surety is October 7, 1922, then the order for the extension of the time for filing the transcript, and the filing of the same, were within the statutory period. If the date of the justification is July 19, 1922, the time of the examination of one of the sureties, then the transcript was filed too late.

The exceptions to the sufficiency of the sureties were filed in due time. The proceedings following are directed by Section 550, subdivision 3, Or. L., which reads:

"(3) The qualifications of sureties in the undertaking on appeal shall be the same as in bail on arrest, and, if excepted to, they shall justify in like manner";

and subdivision 4 of that section, which so far as material here, reads thus:

"(4) From the expiration of the time allowed to except to the sureties in the undertaking, or from the justification thereof if excepted to, the appeal shall be deemed perfected. * * *"

Section 270, Or. L., is as follows:

"Justification of Bail.—For the purpose of justification, each of the bail shall attend before the judge or clerk, at the time and place mentioned in the notice, and may be examined on oath, on the part of the plaintiff, touching his sufficiency, in such manner as the judge or clerk in his discretion may think proper. The examination shall be reduced to writ-

ing and subscribed by the bail, if required by the plaintiff.''

Section 271, Or. L., reads thus:

"Allowance of Bail.—If the judge or clerk shall find the bail sufficient, he shall annex the examination to the undertaking, indorse his allowance thereon, and cause them to be filed with the clerk of the court in which the action is pending; * * ''

In the case of *Moorehouse* v. *Weister*, 56 Or. 126 (95 Pac. 497, 107 Pac. 470, 108 Pac. 121), this court, after referring to the statute, in determining whether the justification of the sureties on an undertaking on appeal is at the time the surety appears before the officer for examination, or at the time the examination is completed, and the undertaking approved, held as follows:

"Under the statute the justification of a surety consists in his examination before the officer at a time and place specified, the reduction of such examination to writing, and signing of the same by the surety, when requested, and a finding that the surety is sufficient by the officer before whom the examination is had, which is evidenced by the indorsement on the undertaking.''

See, also, *Logan* v. *Cross*, 98 Or. 274 (192 Pac. 656, 1119).

2. It is clear from the statute, and the opinion referred to, that the proceedings for justification of the sureties upon an undertaking on appeal after exceptions to the sufficiency of such sureties have been filed, should be evidenced by an indorsement on the undertaking by the officer before whom the examination is made, whether the judge or clerk, or by some written memorandum indicating that the undertaking on appeal is approved. The requirement of the stat-

ute as to indorsement has a twofold purpose; one to show the official approval of the bond, and the other to definitely fix the time for filing the transcript of record.

3, 4. There is no indorsement of the allowance on the undertaking on appeal in the present case. Therefore the order of the court allowing the undertaking stands in place of such an indorsement. The justification was not complete until after the examination of one of the sureties, and the waiver of respondent as to the examination of the other surety, and the reduction of such examination to writing, the signing of the same by the surety, if it was requested, and the finding by the judge that the sureties were sufficient. This finding, as stated, must be evidenced by an indorsement on the undertaking, or an order entered approving the bond. Such order, in the present case, was recorded on October 7, 1922. In other words, the law does not permit the matter of the justification of the sureties upon an undertaking on appeal to be left for determination by proof *dehors* the record, which would not only endanger the rights of the parties, but tend to cause confusion and misunderstanding.

In *Cantrall* v. *Sterling Mining Co.*, 61 Or. 516 (122 Pac. 42), the justification of the surety was in writing waived by counsel for plaintiffs upon a certain date, and an entry thereof made in the record. Such waiver was held to be tantamount to a justification. The waiver of counsel mentioned in the present case would apply more particularly to the surety who was not examined, and would not obviate the necessity of making some record of the allowance of the under-

taking to serve as an indorsement of the allowance of the undertaking by the trial judge.

The justification of the surety having been completed and the undertaking on appeal approved on October 7, 1922, the transcript was filed within the statutory period, as extended by orders duly made by the trial court.

The motion to dismiss the appeal is denied as in our former order.

MOTION TO DISMISS DENIED.

---

Modified September 25, 1923.

ON THE MERITS.

(218 Pac. 917.)

MODIFIED.   REHEARING DENIED.

For appellant there was a brief over the names of *Mr. LeRoy Smith* and *Mr. L. B. Sandblast,* with an oral argument by *Mr. Smith.*

For respondent there was a brief over the names of *Mr. Joseph K. Carson* and *Messrs. Winter & Maguire,* with an oral argument by *Mr. Robert F. Maguire.*

McCOURT, J.—Plaintiff, as the assignee of a chattel mortgage upon the furniture and household goods in the Sheffield Apartments, Portland, Oregon, the condition of which mortgage had been broken by the mortgagees, commenced this action against the mortgagees, the defendants herein, to recover the possession of the mortgaged property, as authorized by Section 10183, Or. L. The purpose of the action was to place plaintiff in a position to foreclose the chattel mortgage in the manner therein provided.

The complaint is in the usual form of a complaint in an action of replevin.

The defendants answering, denied the allegations of plaintiff's complaint, and pleaded affirmatively that they purchased the personal property covered by the chattel mortgage, together with the assignment of a lease on the Sheffield Apartments from Lyle Ashton, plaintiff's assignor, for the agreed consideration of $14,000, of which sum they paid $5,600 at the time the sale was made, and discharged the balance by their promissory note in the sum of $8,400, payable in monthly installments of $350 and interest, which note was secured by the chattel mortgage mentioned.

Defendants further averred in their answer that they were induced to make the aforesaid purchase by false and fraudulent representations made to them by Lyle Ashton, which they believed and relied upon, and by reason of which they were injured and damaged in the sum of $10,000; that they paid $700 upon the principal of the note and interest to October 1, 1921; that Lyle Ashton assigned the above-mentioned note and mortgage to plaintiff without consideration and for the purpose of defeating defendants' claim for damages, and that, unless restrained, plaintiff would seize the mortgaged property to satisfy his mortgage and harass defendants and put them to great cost and expense.

Defendants prayed for a judgment for damages in the sum of $10,000, to be set off against the amount due and unpaid on the note and chattel mortgage securing the same, also for a decree directing that the note and mortgage be delivered up and canceled, and for other relief as to the court might seem equitable.

Plaintiff by his reply, denied the affirmative matter in the answer and cross-complaint, and by direct

averment pleaded the assignment of the note and mortgage to him by Lyle Ashton, but did not allege that the assignment was for value or without notice of defendants' claim of fraud. Plaintiff's reply concluded by a prayer for the appointment of a receiver pending the litigation. The cause thereafter proceeded to trial as an equity suit.

After hearing all the evidence, the Circuit Court determined that the defendants had failed to establish the charges of fraud and deceit, as set forth in their answer, and that their equitable defense and cross-complaint were without equity, also that the plaintiff "is the owner and entitled to the immediate possession of all of the personal property described in plaintiff's complaint." The court embodied its aforesaid determination in a judgment and decree, and further directed the sheriff of Multnomah County to deliver the personal property to the plaintiff and place him in the possession thereof forthwith.

Defendants appeal from that judgment and decree.

Defendants' principal assignments of error are directed at the adverse decision of the court upon the issues of fact presented by the allegations of fraud contained in defendants' answer, and denied by plaintiff in his reply.

Defendants contend that the evidence establishes that the sale of the furnishings in the Sheffield Apartments and the lease thereon to defendants, was procured and induced by fraudulent representations made to defendants by Lyle Ashton, plaintiff's assignor, as charged in the answer and cross-complaint of defendants, and also establishes that defendants were damaged by reason of such fraud and deceit in the sum of $10,000, entitling them to the relief prayed for in their answer and cross-complaint.

Before proceeding to a consideration of the specific fraudulent representations which defendants allege were made by plaintiff's assignor to induce the sale and transfer in question, it may be helpful to set forth a brief explanation of the situation and relations of the parties, together with a general description of the subject matter, as the same are disclosed by the evidence.

The Sheffield Apartments contain twenty-four housekeeping apartments, some having three rooms therein, and the others four rooms each. Each apartment is provided with a bathroom and kitchen, and equipped with electric lights and a telephone. More than half of them were furnished, and the remainder were unfurnished at the time of the transactions under consideration.

Mrs. Ashton owned the household furniture and furnishings and held a lease upon the building, which lease by its terms terminated on December 1, 1923. The rental provided by the lease was $650 per month, payable monthly in advance. Under the terms of the lease the tenant was required at her own expense to keep the building in repair, except repairs to the roof and to piping and plumbing within or behind the walls. Apartment designated as No. 26 therein and one room facing on Jefferson Street in apartment designated No. 42 were reserved by the lessor, and it was provided in the lease that the lessee should furnish heat, telephone, water and other general service without charge to the occupants of the apartment and room so reserved. It was also provided in the lease that the lessee should deliver up possession of the premises to the lessor at the expiration of the term of the lease, or at any earlier termination thereof.

No provision was made in the lease for any extension thereof.

Lyle Ashton acquired the furniture of the Sheffield Apartments, and the leasehold interest above mentioned, on February 23, 1921, and upon that date entered upon the operation and management of the apartment house, and managed and conducted the same about five months, or until she sold her furniture, furnishings and leasehold interest to the defendants on August 1, 1921.

The defendants are husband and wife; for about two years prior to the transaction in question, B. H. Preston, with the assistance of a janitor employed by him, had been conducting an apartment house in the City of Portland; Florence Preston is an experienced business woman. Defendants apparently entertained the expectation (since disappointed), that a World's Exposition would be held in Portland in 1925; in anticipation of that event, and calculating that space for the accommodation of visitors would then likely be at a premium, defendants conceived the purpose of securing another apartment house with the intention that defendant Florence Preston would manage and conduct the same. Accordingly, about July 22, 1921, defendants entered into negotiations with Lyle Ashton for the purchase of the furniture in, and lease upon, the Sheffield Apartments, throughout which negotiations the parties dealt at arm's-length.

On the last-mentioned date, defendant Florence Preston was shown through the apartment house by Lyle Ashton, and inspected a number of the apartments and the furniture and furnishings therein. As they went about the premises, Lyle Ashton informed Mrs. Preston of the amount of rent received from each apartment when occupied; that the rent of each

109 Or.—16

apartment was on the average five dollars per month more in the winter months than in the summer months; and that the item of rent payable to the owner under the terms of the lease, was $650 per month. Defendant at the time understood (whether from previous knowledge or from information given her by Lyle Ashton, does not appear), that the cost of incidental repairs, removing garbage, janitor service, and for water, heat, light and telephones supplied to the occupants of the apartments, constituted items of expense in the operation of the apartments which the party conducting the same was required to pay.

On July 26, 1921, the defendants together made an examination of the apartment house, and also inspected several of the apartments therein, including some that were furnished, in which cases they also examined the furniture and furnishings. Lyle Ashton gave defendants such further information respecting the operation of the apartments, as was called for by inquiries made by defendants.

Following this second visit and examination of the premises, defendants agreed to purchase the interests of Mrs. Ashton, and thereafter on August 1, 1921, the transfer was consummated, and defendants took possession and entered upon the management of the apartments.

Several of the representations which the defendants allege that Lyle Ashton made to induce them to purchase the furniture owned by them, and situate and located in the Sheffield Apartments, together with their leasehold interest, and which defendants claim were fraudulent, consist of predictions as to the future conduct of the owner of the Sheffield Apartments. Defendants alleged in their answer in sub-

stance, that Lyle Ashton, for the purpose of inducing them to purchase the property and execute a note and chattel mortgage in part payment therefor, falsely and fraudulently represented to the defendants that she had been positively assured by the owner that the rent would not be raised at the expiration of the present lease, and that the defendants could remain indefinitely at the present rental of $650; that the owner of the building had kept the building in good repair and condition at his expense, and would continue to do so; that some window blinds or shades which were needed would be furnished by the owner of the building; that the owner would immediately make needed repairs to any of the elevators.

Defendants further averred that the foregoing representations were false and fraudulent, in that the lease would not be extended beyond December 1, 1923, at the rental of $650 per month; that the owner of the building would not keep the same repaired, and had not done so, and would not supply window blinds or shades where needed, and the owner would not make needed repairs to the elevators, or any of them.

Defendants testified that Lyle Ashton made the representations in respect to the above matters set out in the answer, while Lyle Ashton testified that she made no statements regarding an extension of the lease, or that the rent would continue the same beyond the term provided in the lease; that she did not state that the owner of the building kept the same in good repair at his own expense, or that he would continue to do so.

Lyle Ashton also testified, and was corroborated by her husband and Mr. Gustav, the owner of the building, to the effect that she had asked the owner to furnish some needed window blinds or shades,

and that he had asked her to furnish a list of those needed, and lead her to believe that he would furnish them, and that on several occasions when the elevators had become out of repair, she had notified the owner, who had promptly made the repairs, and that she so informed defendant Florence Preston.

5. It is a well-established rule that actionable fraud cannot be based upon erroneous predictions of the future conduct of independent third parties: 26 C. J. 1089; *Schwedler* v. *First State Bank,* 92 Or. 33, 39, 40 (179 Pac. 671); *Davis* v. *Reynolds,* 107 Me. 61 (77 Atl. 409); *Hazlett* v. *Wilkin,* 42 Okl. 20 (140 Pac. 410); *Town Site Co.* v. *Novotney,* 32 S. D. 565 (143 N. W. 895); *Ore City* v. *Rogers* (Tex. Civ. App.), 190 S. W. 226.

6. Leaving out of consideration, the rule supported by the authorities above cited, it appears from the evidence that the leasehold interest purchased by defendants is evidenced by a written lease, in which all the respective obligations of the lessor and lessee and their assignees during the term of the lease, are clearly expressed; the alleged false representations ascribed to the lessor, obligations contrary to, or not imposed by, the covenants of the lease. Under the circumstances of this case, notice of all the provisions of the lease at the time of, and before, the transfer, must be imputed to defendants. It is therefore manifest that defendants were not entitled to rely upon the representations or promises of Lyle Ashton, if any such were made, that the lessor would assume liabilities or grant privileges to the assignee of the lessee, not provided for in that instrument.

7. Defendants also charged that Lyle Ashton falsely and fraudulently represented that eight of the apartments could not be shown to defendants for various

designated reasons, and falsely and fraudulently repre-
sented that the furniture and furnishings and the
condition of the rooms of said apartments not shown,
were equal to the furniture, furnishings and condi-
tion of the apartments which were shown to defend-
ants, and that the condition of the woodwork and
walls in every apartment in the house were in perfect
condition, and that there would be nothing to do, ex-
cept to paint the kitchen wall in Apartment No. 35;
also that the apartment house had a patronage that
kept all the apartments occupied all the time while
conducted by Lyle Ashton, and that all the apart-
ments were leased to permanent, paying tenants at
the time of the sale; and further, that the owner of
the building had reserved for his use one room in
one of the apartments, and no more.

The evidence shows that on July 22d, the defendant
Florence Preston was shown over the building and
through some of the apartments—she says eight of
them only; and again on July 26th, both the defend-
ants were shown through the building by Lyle Ashton,
and through some of the apartments. Defendants
testified that on this occasion they were again shown
only eight apartments, while Lyle Ashton testified
that she showed them through fourteen apartments,
calling their attention to the fact that two of the
unfurnished apartments were vacant, and that Apart-
ment No. 26, was, under the terms of the lease, re-
served by the owner of the building, and was furnished
better than any of the other apartments; that the
apartments not shown were locked by the tenants,
who in most cases, had occupied them for several
years, and had private locks upon the doors, with the
exception of Apartment No. 24, and that apartment

was not shown because the occupants were so untidy and dirty, that she declined to show it to anyone.

Mrs. Preston further testified that when she assumed the management of the Sheffield Apartments on August 1st, she found that many of the apartments not shown were in a bad state of repair, making it necessary to tint the walls and stain the floors before new tenants could be secured for them; that such apartments were in much worse condition than those shown; while Mrs. Ashton testified that the apartments not shown were in substantially the same condition as those shown.

We think the evidence does not disclose an effort or desire on the part of Mrs. Ashton to keep the defendants from inspecting the apartments which they did not examine, but does show that the defendants made such an examination and inspection of the apartment house as to adequately inform them of the physical condition of the several apartments.

Defendant Florence Preston claims that two of the apartments were occupied by transient tenants, and that on August 1st, the day she entered into possession, three tenants moved, leaving five vacant apartments. It appears from the uncontradicted evidence, that all the occupants in the apartment house were tenants paying from month to month, many of whom had resided there for several years; that the tenants that moved on August 1st were month-to-month tenants, and it does not appear that the vacancies which arose on August 1st were unusual or unexpected in an apartment house of that size. It also appears that within a month Mrs. Preston succeeded in having all the apartments retenanted, and they continued to be so occupied up until the time of the trial of this

suit, with the occasional vacancies usual in such an apartment house.

We come now to the consideration of an alleged false representation which presents more difficulty than those previously discussed.

Defendants allege in their answer that Lyle Ashton falsely and fraudulently represented that the said apartment house was yielding a net income of $600 per month, and that she had netted that amount in profits monthly, and defendants further aver that the said Lyle Ashton was not, and had not been, making a net profit of $600 per month, or a greater sum than $350 per month from the business of said apartment house.

Defendants each testified that, in the course of the negotiations for the sale, Lyle Ashton represented and stated ''she was clearing $600 a month,'' and that ''one month she cleared $610.''

Defendant Florence Preston further testified that, after paying the rent, the charges for telephones, light, water, heat, garbage and janitor service and for miscellaneous expenses, the net income from the property could not be made to exceed $300 per month if every apartment was occupied and yielding rent.

Mrs. Ashton testified to the effect that she stated to defendants, 'that during the time she operated them, the apartments, after paying all the running expenses, netted a profit of $600 per month. Mrs. Ashton explained that she calculated that profit upon the winter rates of rental, with the apartments all filled, and that the summer rental was $5 less for each apartment, and that she so informed defendants; she further testified that she made no allowance for the wages of a janitor, as her hus-

band performed that service. The evidence showed that the additional cost of heat furnished to the tenants in the winter months substantially equaled the higher rent charged during that period, so that the excess of income over expenses did not vary much with the change of seasons.

The evidence further showed that, leaving out of consideration the cost of janitor service, the net income of the apartments received by Mrs. Ashton while she managed them, did not average a greater sum than $500 per month, and was not greater than $542.15 for any month of the period, falling to $440.15 for July. The net income per month received by Mrs. Ashton during the months she operated the apartments as shown by her books, was as follows: March, $457.01; April, $542.15; May, $517.39; June, $515.19; July, $440.15, or an average of $493.18 per month.

8. The representations made by Mrs. Ashton of past income or profits of the apartments were material, and clearly were intended to influence the sale of her interests and property in the apartments to defendants, and it seems equally clear that they were an important element in inducing the sale.

Positive statements of a vendor as to past or present rents or the past profits or earnings of a business are usually held to be representations of fact upon which fraud may be predicated if they are false, since these are matters within the vendor's own knowledge, and redress will not be denied on the ground that the vendee could have learned the truth by investigation: 12 R. C. L. 287; 26 C. J. 1204.

9. Defendants did not ask for an inspection of the books and accounts kept by Lyle Ashton, an examination of which would have disclosed that the apartments did not yield the amount of income represented by the latter. Defendants also knew that there were expenses to be incurred in operating an apartment house, and that such expenses included the charges for light, water, heat, telephones, garbage and janitor service. They could have learned the approximate amount of those charges by an investigation which would not have been difficult; they knew the rental rate of each apartment and also the amount of rent provided in the lease from the owner of the building. From the data mentioned they might have calculated the probable net income from the apartments, and discovered that such income was considerably less than $600 a month.

But, a vendor who has misrepresented a material fact to his prospective vendee and misled the latter to his injury, will not be permitted to say to him, "You ought not to have believed or trusted me," or "You were yourself guilty of negligence," Bigelow on Frauds, 523, 528, 534; *Speed* v. *Hollingsworth,* 54 Kan. 436 (38 Pac. 496).

10. Where a vendor makes a statement concerning a matter susceptible of accurate knowledge and in the form of a positive assertion, he is required to speak the truth: *Purdy* v. *Underwood,* 56 Or. 59 (169 Pac. 536); *Jeffreys* v. *Weekly,* 81 Or. 140, 146 (158 Pac. 522, Ann. Cas. 1918D, 690); *Caples* v. *Morgan,* 81 Or. 692, 701 (160 Pac. 1154, L. R. A. 1917B, 760); *Palmiter* v. *Hackett,* 95 Or. 12, 21 (185 Pac. 1105, 186 Pac. 582), especially where the evidence of the truth is contained in his own books

of account: *Champneys* v. *Irwin,* 106 Wash. 438
(180 Pac. 405); *Harvey* v. *Smith,* 17 Ind. 272;
*Circle* v. *Potter,* 83 Kan. 363 (111 Pac. 479); *De
Frees* v. *Carr,* 8 Utah, 488 (33 Pac. 217); *Powell* v.
*Linde,* 49 App. Div. 286 (64 N. Y. Supp. 153).

Such vendor cannot escape liability on the plea
that the vendee was not entitled to rely upon the
representations made or that the vendee was negli‚
gent because of his failure to make such an inves-
tigation as would have disclosed the falsity of the
representations: *Larsen* v. *Lootens,* 102 Or. 579,
595 (194 Pac. 699, 203 Pac. 621).

It is obvious that a property, the operation of
which is, and has been returning, a profit of $600
a month, will command a greater sale price than
could be obtained for the same property if its net
earnings are, and had been, only $500 per month.
Defendants purchased the property in suit at a
price based upon representations that the profits
were the higher figure, when in fact the profits did
not exceed, if indeed they equaled, the lower figure.
Manifestly defendants were damaged in some
amount.

11, 12. Defendants are entitled to have the amount
of plaintiff's note reduced to the extent they were
damaged by the false representations concerning
the past earnings or profits of the apartments. The
evidence establishes that the net profits from the
apartments actually were approximately $100 less
than represented to defendants by Mrs. Ashton.
In estimating defendants' damages, the value of the
furniture and furnishings and the physical condition
of the apartments must be left out of consideration,
as no fraud is established in respect to them.
Neither the term of the lease nor the obligations of

the parties were affected by the false representations of profits. The apartments did in fact return a substantial profit when operated by defendants, as well as when they were managed by Mrs. Ashton. The purchase price agreed upon by the parties, in the absence of other evidence, fixes the value the property would have had if in all material respects, it had been as represented.

Aside from the evidence that the profits were $100 less per month than represented, no evidence was given by either party to establish the difference between the price the defendants agreed to pay and the actual reasonable market value of the property and rights purchased by them.

Defendants' damages then must be determined by taking into consideration the unexpired term of the lease and the discrepancy between the fact and the statements of Mrs. Ashton concerning profits, together with the unreliability of evidence of past profits in determining value.

Experience teaches that profits made by one person in the conduct of a business furnish no certain assurance that another party can run the same business and secure the same, or any, profit.

The lease had twenty-eight months to run, so that the loss of defendants resulting from the false representations, could not have exceeded $2,800, had they retained and operated the apartment house until the expiration of the lease. The damages, however, must be estimated as of the date of the sale, to wit: August 1, 1921.

Giving weight to the matters that must be considered in reduction of the above-mentioned sum, such as the present worth of money collectable in the future and the uncertainty of evidence of

profits as a guide to ascertaining the reasonable value of property, we determine and assess defendants' damages at $2,000. Defendants are entitled to recover the last named sum in damages, and to have the same set off against plaintiff's note, and credited thereon as of August 1, 1921.

13. Inasmuch as the damages to which defendants are entitled do not equal the amount of the note which plaintiff holds against them, the court is not authorized to enjoin or restrain plaintiff from foreclosing the chattel mortgage against the defendants. Plaintiff was entitled to possession of the property in order to enable him to foreclose his mortgage and apply the proceeds of a sale of the property in satisfaction of the amount due upon the note secured by the mortgage, after crediting thereon $2,000 damages awarded defendants as of August 1, 1921.

14. After directing the sheriff to deliver the mortgaged property to plaintiff and place him in possession thereof forthwith, the Circuit Court incorporated in the decree a provision commonly found in decrees granting strict foreclosure of the equitable claims of a defaulting vendee of lands, wherein the court declared in effect, that upon payment of the full amount of the note, with accrued interest and costs on or before thirty days after the date of the decree, defendants should have the right to purchase the mortgaged property from the plaintiff and obtain a satisfaction of the mortgage, but in the event the defendants failed to make such payment, all their right, title and interest in the property should cease and determine, and they should have no further interest therein.

In view of the provisions of our statute directing that foreclosure of a mortgage shall be made in the manner provided therein (Section 10184, Or. L.), and the facts that defendants held the legal title to the mortgaged property and the plaintiff held only a lien thereon, the provisions of the decree were erroneous.

Unless exceptional complications are present, strict foreclosure of a chattel mortgage can be granted in this state only in cases where the legal title is in the party seeking foreclosure: Jones on Mortgages (7 ed.), §§ 1538–1540; *Warner Bros. Co.* v. *Freud,* 138 Cal. 651 (72 Pac. 345); 11 C. J. 739.

*Dose* v. *Bank of Woodburn,* 58 Or. 529 (115 Pac. 286), and *Lind* v. *Boulin,* 97 Or. 232 (190 Pac. 1103), were cases involving personal property, and in each case strict foreclosure was granted in favor of the party in whom the legal title to the property was vested, thereby cutting off the lien claim of the adverse party.

15. It does not appear that this provision of the decree had any effect upon defendants' rights, except perhaps to suspend for thirty days the right of the plaintiff to proceed with the foreclosure of his mortgage, and of that, defendants of course, can have no valid complaint.

The decree of the Circuit Court is modified in accordance with the views above indicated. A decree will be entered in this court, awarding to plaintiff the immediate possession of all the personal property described in his complaint and ordering the sheriff to deliver the same to plaintiff forthwith, and adjudging that the defendants were injured and damaged in the sum of $2,000 by the false representations made by Lyle Ashton to induce the

sale to defendants of the Sheffield Apartments, which said sum shall be applied in reduction of the amount due upon plaintiff's note and mortgage, and the plaintiff shall credit said sum thereon as of August 1, 1921.

Defendants shall recover costs in this court.

MODIFIED AND DECREE ENTERED. REHEARING DENIED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.