## WREN v. BOHANNON et al.

No. 12506.

Court of Civil Appeals of Texas.
San Antonio.
Feb. 25, 1953.

Rehearing Denied March 25, 1953.

W. R. Smith, Jr., Austin, Magus F. Smith, Samuel L. Oakleaf, McAllen, for appellant.

Ewers, Cox & Toothaker, William E. York, McAllen, Kelley, Looney, McLean & Littleton, Ned A. Whitt, Edinburg, for appellees.

POPE, Justice.

This is an appeal from a summary judgment which denied appellant, Wren, all recovery on his suit which alleged fraud and in which he sought cancellation of certain instruments by which appellant conveyed a cotton gin to appellees Bohannon and Snow, in consideration of certain vendor's lien notes secured by a canning plant.

During March of 1951 appellant, W. H. Wren, as seller entered into a written contract with appellee Bohannon, by the terms of which Wren agreed to sell to Bohannon a cotton gin situated in Hidalgo County. Bohannon agreed to pay Wren $20,000 in cash and $40,000 in vendor's lien notes, executed and secured by appellee Snow as president of Valley Foods, Inc. The contract between the parties, among other things, provided:

"It is understood by and between the parties that each party shall have five (5) days in which to inspect the other party's property and security in order that each party may rely upon his own judgment, and not the representation of

the other party with respect to the value of such property and securities, and if either party is not satisfied with the value of such property he may cancel this contract by notifying the other party by registered mail within the time above specified that he is not satisfied as to the value of the property or security to be received by him, and in such event the contract shall be null and void; otherwise, the parties agree that this transaction and the transfer of bills of sale and assigns shall be made on or before the expiration of fifteen (15) days from these presents provided, however, that in the event title defects should occur, or in the event it becomes necessary to perform curative work in connection with the gin, that the parties shall have a reasonable time to make such corrections."

The parties executed that agreement and below the signatures was an additional sentence with signatures, as follows:

"We have inspected the respective properties in accordance with the above contract and are satisfied.

"W. H. Wren

"Wallace Bohannon"

The sale was consummated, and thereafter appellant, Wren, instituted this suit wherein he alleged that Bohannon and his agent had fraudulently represented to Wren (1) that the notes were "good as gold"; (2) that they were cashable at any bank; (3) that Valley Foods, Inc., the maker of the notes, was owned and operated by Raymond Snow, who was financially responsible and owned a great deal of property in the Valley; (4) that the plant and properties securing the notes were reasonably worth the sum of $300,000; (5) that the previous year Bohannon paid an income tax on $180,000 earned from the plant; (6) that the Bohannon family made all its money from the plant; (7) that a former operator had made enough money from the plant to retire; (8) that Snow as present owner and president of the plant had invested from $40,000 to $50,000 in the plant; (9) that the plant had enough money for

operation, and (10) that the plant was solvent.

The summary judgment will be reversed and the cause remanded. The provision in the contract that each of the parties would have five days in which to inspect the other party's property and security and then rely upon his own judgment, together with the subsequent acknowledgment by the parties that they had inspected the properties, forms the basis for the trial court's judgment and appellees' arguments to uphold that judgment. Giving the words of the contract their complete meaning, they call for an inspection of the properties and security, but an inspection of properties is not necessarily an investigation into the truth or falsity of representations which related to matters other than the physical condition or value of the properties. A detailed and exhaustive physical inspection of the properties and securities would not necessarily reveal that Bohannon paid an income tax on $180,000 earned from the plant the previous year, nor that the Bohannon family made all its money from the plant, nor that a former operator had made enough money from the plant to retire, nor that the present owner and president of the plant had invested from $40,000 to $50,000 in the plant, nor that the plant had enough money for operation, nor that the plant was solvent. Inspection may reveal a complete and efficiently equipped plant, but matters wholly apart from the physical equipment may be such as would render plant operation impossible as a going concern for a single day. The contract did not call for an investigation of all representations, appellant did not acknowledge such an investigation, and there is no showing that an inspection of the plant revealed facts which imposed upon appellant the duty to make and pursue such an investigation.

Appellees rely upon an opinion by the Supreme Court of Washington: Parker v. Brainard, 91 Wash. 428, 157 P. 1078, which also concerned a contract that contained a five-day investigation clause, wherein the Court held that no fraud existed because an acknowledgment of inspection closed com-

plainant's mouth to claim fraud as to matters that would be revealed by inspection. The claimed misrepresentation in that case was the condition of the physical property, and in particular the number of fruit trees on the land in question. That fact, unlike the instant case, would be revealed by a visual inspection which the contract required. Some courts have repudiated the legal validity of such provisions. Jordan v. Nelson, Iowa, 178 N.W. 544; Bridger v. Goldsmith, 143 N.Y. 424, 38 N.E. 458.

This Court in Tips v. Barneburg, Tex. Civ.App., 11 S.W.2d 187, 190, delineated the difference between an inspection of physical properties and an examination of such things as business records and other facts that would not be revealed by inspection of property. In that case the plaintiff actually inspected the property, but was furnished no access to the business records, and this Court stated: "Appellant made false representations which he knew could not be shown to be false by any investigation within the power of appellee. It was not essential that the false representations should have been the sole cause moving appellee to make the trade, still if appellee was induced to act by such representations he can recover. Stoker v. Fugitt, Tex.Civ.App., 113 S.W. 310; Hoyt v. First Nat. Bank, Tex.Civ.App., 247 S. W. [637] 645, affirmed by the Supreme Court, Freshwater v. Hoyt, Tex.Com.App., 259 S.W. 923; Moore v. Bleakley [Beakley], Tex.Com.App., 215 S.W. 957." Other cases support this view: Vance v. Batterton, Tex.Civ.App., 187 S.W.2d 247; Blaine v. Lowery, Tex.Civ.App., 157 S.W.2d 713; Corbin Co. v. Preston, 109 Or. 230, 212 P. 541, 218 P. 917; Rothstein v. Janss Inv. Corporation, 45 Cal.App.2d 64, 113 P.2d 465.

When matters are peculiarly within the representer's knowledge and the "representee is ignorant thereof, it is generally held that, although the real fact appears on the public records, the representee is under no obligation to examine the records, and his failure to do so does not defeat his right of action." 37 C.J.S., Fraud, § 34c. The same section states that there is no duty on the part of a representee to examine corporate records, even though he be a stockholder, saying: "Where representations are made as to the financial condition or past profits and dividends of a private corporation, they may be relied on without examining the records of the corporation to test their truth, even though the party may be a stockholder and as such may have the right to make such an examination." Morrison v. Cotton, Tex.Civ. App., 152 S.W. 866; Hull-Tex Oil Ass'n v. Pipes, Tex.Civ.App., 240 S.W. 994; accord, Morrow v. Franklin, 289 Mo. 549, 233 S.W. 224; Hines v. Royce, 127 Mo. App. 718, 106 S.W. 1091; Rothmiller v. Stein, 8 Misc. 137, 9 Misc. 167, 29 N.Y.S. 707; 26 C.J., Fraud, 70c; Black, Rescission and Cancellation, §.118.

Appellant alleged ten separate grounds of fraud, which we have stated above. The last six of those grounds were allegations of past facts rather than mere opinion and were legally sufficient upon which to base this suit. 23 Am.Jur., Fraud and Deceit, §§ 68, 69, 73; 20 Tex.Jur., Fraud and Deceit, § 57. We do not pass upon the validity of the clause in the contract, since it cannot be construed to include representations constituting those six grounds and to impose upon appellant a duty that would require him to investigate their truth.

The judgment is reversed and the cause is remanded.