Argued January 27; affirmed May 17; rehearing denied June 7, 1932.

## BURGESS ET UX. *v.* CHARLES A. WING AGENCY, INC., ET AL.

(11 P. (2d) 811)

*F. J. Newman* and *P. J. Neff,* both of Medford, for appellants.

*Kelly & Kelly,* of Medford, for respondents.

ROSSMAN, J.  We shall refer to the Wing Agency as the defendant.  Uncontroverted evidence showed that prior to February 8, 1930, the plaintiffs were the owners of the merchandise and fixtures which constituted a grocery store in the city of Medford and that, pursuant to a desire to sell the store, they signed a

document prepared by the defendant which, after describing the store and placing upon it a valuation of $7,000, authorized the defendant as their agent to find a buyer. The plaintiffs' financial circumstances were such that they could accept nothing but cash in the event of a sale, and they so informed the defendant. One Charles R. Gail, who was the owner of a seven-acre tract of land adjacent to the city of Medford, visited the defendant's office and expressed a desire to purchase the plaintiffs' store if he could apply his land as a part payment upon the purchase price. The defendant then talked to the plaintiff A. C. Burgess and later took him to Gail's land. After some delay the plaintiffs acquiesced in the terms suggested by Wing and he then prepared a contract which the plaintiffs, together with Gail and the latter's wife, signed. This, in substance, provided that the plaintiffs should convey their store to the Gails at a price of $7,160, $4,500 of which sum should be discharged by a deed to the land. It will be observed that at the outset the defendant was the agent of the plaintiffs only. In the negotiations just mentioned it became Gail's agent also and the contract which Wing prepared recited that it represented all parties and therein each bound himself to pay a commission. The plaintiffs, in obedience to the contract, transferred to the Gails the grocery store and the latter conveyed to the plaintiffs the land. The plaintiffs charge that in the negotiations the defendant deceived them into the belief (1) that the seven-acre tract of land was worth $4,500; (2) that the defendant already had a purchaser who was willing to pay for the land that sum of money; and (3) that, in any event, the land could be sold within a period of six months for at least $4,500. We shall not mention the other charges of fraud alleged in the complaint because the assign-

ments of error do not concern them. The complaint avers that the value of the land did not exceed $1,500. Both plaintiffs testified that the alleged representations were made, that they believed them and relied upon the statements of Wing when they consummated the transaction. Plaintiffs' witnesses testified that the value of the land did not exceed $1,500. This evidence of value was scarcely disputed by the defendants. When Wing was asked for his opinion of the value of the land he repeatedly sought to evade answering by countering with the replies, ''The property was neither soup nor fish. * * * Who was capable of stating the value?'' etc., and finally replied, ''If you were going to go out and sell it under the hammer and sell it as a ranch, it wasn't salable.'' He added that as a subdivision it was worth $4,500. The defendant admitted that he had made representations concerning the value of the land and his ability to resell it within a period of six months, but testified that his promises were conditioned upon the land being subdivided into half-acre lots improved with streets and other facilities, and that he be invested with the exclusive agency for the sale of the land.

Only three assignments of error are presented by appellants' brief. Two of these are predicated upon the circuit court's refusal to read to the jury instructions requested by themselves and bearing numbers 1, 3, 2 and 6. The third assignment of error challenges a ruling made by the circuit court which sustained the plaintiff's objection to a question propounded to Wing.

Requested instruction No. 1 states that before the plaintiffs would be entitled to a verdict it would be necessary that the evidence should show that the defendant was guilty of the charge of fraud alleged in the complaint, and that a fraudulent representation may

consist of a statement made by one who knew it was false when he made it, or of a statement made recklessly without regard for its verity. This requested instruction also stated that before a representation can become actionable it must appear that the plaintiffs relied upon it, believed it was true, and were misled thereby. The third requested instruction enumerated the six elements of fraud in language very similar to that employed in this court's decision in *Wheelwright v. Vanderbilt*, 69 Or. 326 (138 P. 857). Requested instruction No. 2, after stating that a representation to be actionable must concern a material matter concerning which the complaining party did not possess adequate knowledge, continues: "Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations without further showing that he has been prevented from making such investigation through some act of the defendant." The sixth requested instruction states: "If the jury finds from the evidence that there was no confidential relationship existing between the defendants and the plaintiffs in connection with the sale or the exchange of the property in question, or no special duty on the part of the defendant to disclose to the plaintiffs the actual value of the property taken in exchange by them, and that the parties were dealing at arm's length, it does not help the purchasers who accept and rely upon the statements of the vendor or his agent, as to the value of the property when no warranty is intended, and when the language used is not an affirmation of some specific fact, but is merely an opinion."

The first assignment of error is based upon the first and the third requested instructions which, it will be observed, state in an abstract manner the elements of fraud. This assignment discloses no error if the instructions actually given imparted to the jury the same information which constitutes the subject-matter of these requested instructions. Without setting forth the portions of the instructions actually given, we state our conclusion that they fully and in well chosen language conveyed to the jury all of the information contained in these two requested instructions. The court's instructions not only stated to the jury the elements of fraud but also, to the limited extent permissible, showed the jury how to apply them to the circumstances described by the two sets of witnesses. In fact, the appellants' brief does not argue that the instructions given failed to instruct the jury upon the common elements of fraud, but endeavors to support this claim of error by urging that "the court should have called to the attention of the jury the two alleged representations of an immediate resale as against a resale within a period of six months after the property had been put in shape for such sale by subdividing the same * * * and should have instructed the jury that plaintiffs must prove that they believed and relied upon the alleged representations that Wing had a buyer then ready and willing to buy at $4,500. * * * The court should also have told the jury before they could find for plaintiffs on the promise to resell within six months time they must take into consideration the defendants' claim that this promise was contingent upon plaintiffs subdividing the property in question into half-acre tracts * * * and should have called the jury's attention to the fact that the testimony introduced by the plaintiffs and defendants tended to show

that the promise to resell within six months time was contingent upon such subdivision being made   *   *   * and should have advised the jury that they were entitled to take all these matters into consideration in arriving at their conclusion as to whether or not at the time such promise was made the same was false *   *   *.'' None of the objections which the defendants now voice was brought to the attention of the circuit court and the material which the defendants now insist the instructions should have contained was not contained in any requested instructions. Those actually given fully covered the requested instructions. The plaintiffs did not admit that Wing's promise of a resale within six months time at a price of $4,500 was a conditional one. A. C. Burgess testified that the defendant spoke much about the suitability of the seven-acre tract for subdivision purposes, but one can readily infer from his testimony, as well as that of his wife, that the defendant promised to dispose of the property for them as an entire tract without subjecting them to the delay and expense of themselves subdividing the property. The instructions given, in addition to directing attention to the defendants' theory of the case, charged the jury that unless the evidence proved the specific charges of fraud alleged in the complaint the verdict must be in favor of the defendants. If the defendants believed that the instructions given were not sufficient they should have made their wishes known by some application to the circuit court. In the absence of such application and an unfavorable ruling, no premise was supplied for action by this court: *State v. Hay,* 132 Or. 223 (283 P. 753); *State v. Jennings,* 131 Or. 455 (282 P. 560). This is a court of review. The principle of procedure just mentioned found application in *Thomas v. Smith-Wagoner Co.,* 114 Or. 69 (234

P. 814), wherein the appellant, like those now before us, attempted to predicate error upon the 'alleged failure of the court to give certain instructions which he did not request until he had reached this court. This court declined to consider them. It follows that this assignment of error presents no merit.

■ Requested instructions Nos. 2 and 6 which constitute the basis of the second assignment of error may readily be considered together. The second manifestly assumes the absence of any relationship of trust or confidence between the one who made the representation and the other with whom he was dealing, and the sixth directed the jury as to the law ''if the jury finds from the evidence that there was no confidential relationship existing between the defendants and the plaintiffs.'' We have already stated that the uncontroverted evidence showed that at the inception of this transaction the defendant was the plaintiffs' agent and that it later became the agent for Gail also. Appellants' answer and brief contain express statements to the same effect. As a witness, Wing admitted that he had made representations to the plaintiffs, and the brief of the defendant contains the following statement: ''The defendant agency stated and represented to plaintiff Burgess that a loan of at least $2,200 could be secured on said seven-acre tract of land, and that if the said Burgess would subdivide said tract into half-acre tracts, make such subdivision conform to other subdivisions in that vicinity and give to said agency the exclusive listing and selling of such tracts and offer to sell said tracts on small down payments and small monthly installments, that same could be resold within a period of six months for at least $4,500 * * * and that it considered said tract to have a valuation of at least $4,500 as a subdivision possibility.'' We have

set forth this reference to the testimony, answer and appellants' brief for the purpose of showing that the relationship of principal and agent existed between the plaintiffs and the defendant, and that the latter conceded that it had actually made representations to the plaintiffs. Incidentally, we note that as a witness Wing expressed the belief that the highest possible price which could be obtained for a half-acre tract, if the seven acres were subdivided, was $300. He admitted that before that price was obtainable the seven acres would have to be improved with streets, water facilities, etc. He also conceded that a plat would have to be prepared and filed in the proper public office. He added that the expenses of these improvements, together with a five per cent commission, would have to be borne by the property. It is at once evident that if each one of the half-acre tracts was sold for $300 the plaintiffs would not have derived $4,500. This brief reference to the evidence indicates that the defendant's promise that the seven acres would return to the plaintiffs $4,500 cash was an imposible one; that is, impossible unless Wing meant (as the plaintiffs' testimony has a tendency to indicate that he did) that the $4,500 would be obtained from a sale of the seven acres in bulk to someone who bought it "as a subdivision possibility." But returning to the requested instructions, it will be observed from the foregoing that the defendants admitted that a confidential relationship existed between the plaintiffs and Wing and that the latter had made representations to the plaintiffs. Whatever may be the rule requiring investigation where the parties deal at arm's length, it is well established that this necessity does not exist where a relationship of trust or confidence exists 'between the parties so that the principal places reliance upon the

trustworthiness of the other. Where such a relation-ship exists it is the agent's duty to make full and truthful disclosure of all material facts, and he is liable for his misrepresentations and concealments: *Koehler v. Dennison,* 72 Or. 362 (143 P. 649); *Phipps v. Willis,* 53 Or. 190 (96 P. 866, 99 P. 935, 18 Ann. Cas. 119). Moreover, it will be observed that the representations which the plaintiffs claim that Wing made were of a character difficult for investigation. They were promises that within six months he would sell the property for at least $4,500 and thereby supply the plaintiffs with the cash which he knew they badly needed. These promissory representations overcame the plaintiffs' reluctance to sell for anything but cash. This court has twice recently held that a fraudulent promise to make a resale is capable of supporting an action of this character: *McIntosh v. Clarke,* 131 Or. 376 (282 P. 554, 283 P. 16); *Sharkey v. Burlingame Co.,* 131 Or. 185 (282 P. 546). Where one assumes to have knowledge of a subject of which the other is ignorant and knowingly makes false representations concerning it upon which the other relies, the party who thus induced belief will not be heard to say that the person who relied upon him was guilty of negligence: *David v. Moore,* 46 Or. 148 (79 P. 415). The fact that the defendant was the agent of both parties did not relieve it from the agent's duty to be honest, truthful and fair in its dealings with the plaintiffs. At any moment when it felt bound to conceal the truth or disregard the duties of a fiduciary it should have renounced its agency. Although the defendant became the agent of Gail after having been previously employed by the plaintiffs, the latter still had the right to believe that when Wing spoke he would not utter that which was false: *Morgan v. Hardy,* 16 Neb. 427 (20 N. W. 337); *Cox v. Haun,* 127 Ind. 325 (26 N. E. 822);

*Frazier v. Hartford Fire Ins. Co.,* 51 S. D. 40 (211 N. W. 973) ; and *Bell v. McConnell,* 37 Ohio St. 306 (41 Am. Rep. 528). We, therefore, conclude that this assignment of error is without merit.

The third assignment of error is based upon a ruling made by the trial judge which sustained an objection of the plaintiffs to a question which the defendants' counsel propounded to Wing. The question inquired as to the effect upon the marketability of a subdivision when a portion of it had been sold. The record shows that at this point plaintiffs' counsel declared: "That is objected to as leading," and that then the following ensued:

"The Court: I think that is too remote.
"Mr. Newman: And speculative.
"The Court: It is entirely too remote.
"A. Of course—
"The Court: Never mind.
"Mr. Newman: It is ruled on.
"Mr. Newman: I believe that is all, Mr. Wing."

It seems evident that defendants' counsel not only acquiesced in the court's ruling but also supplied an additional reason why the evidence was not admissible. Invited error is never a ground for a reversal: *Brown v. Jones,* 137 Or. 520 (3 P. (2d) 768). Moreover, no offer of proof of the character suggested by section 2-704, Oregon Code 1930, was supplied. This seems to be a fair instance in which to apply the rule that an offer of proof must follow the ruling before a ground for reversal will be present: *Boord v. Kaylor,* 114 Or. 62 (234 P. 263).

The foregoing disposes of all the assignments of error enumerated in the appellants' brief. The arguments accompanying them cover a wide range of sub-

jects and seem to assume that we are at liberty to disturb the jury's verdict. No motion for a nonsuit or for a directed verdict appears in the record and appellants do not claim that they made either in the circuit court. Since the verdict is based upon substantial evidence and is protected by Art. VII, section 3, Constitution of Oregon (p. 131, Oregon Code 1930), we would have no right to interfere with it, even though we might believe that it is in error. These various matters thus argued, which are not the subject-matters of assignments of error, and which were not preceded by any ruling in the circuit court, must be disregarded by this court: *Portland Pulley Co. v. Breeze,* 101 Or. 239 (199 P. 957), and Rule 12, Rules of the Supreme Court (137 Or. 677).

It follows from the foregoing that the judgment of the circuit court will be affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.