Argued April 25; reargued June 27; affirmed July 10, 1934

RICHER ET UX. *v.* BURKE ET AL.

(34 P. (2d) 317)

*Allan G. Carson,* of Salem (John Lichty, of Portland, and Carson & Carson, of Salem, on the brief), for appellants.

*W. C. Winslow,* of Salem (A. E. Schirman, of Salem, on the brief), for respondents.

ROSSMAN, J. As will be observed from the preceding statement of fact, this action is based upon charges of fraud made by the plaintiffs against the defendant Burke, an Oregon real estate broker. The plaintiffs, prior to the transaction which constitutes the subject matter of this action, owned a parcel of

real property located in the city of Everett, Washington. Being desirous of exchanging it for farm land in the vicinity of Salem, Robert Richer, one of the two plaintiffs, and husband of the other, after consulting with Burke, hired him to find a suitable tract and also to effect an exchange. Later, Burke submitted a twenty-acre tract possessed by one Thomas Crowley, situated about six miles from Salem. Still later an exchange was effected.

The complaint avers that Burke, in inducing the plaintiffs to sign a deed for their Everett property, deceived the plaintiffs by fraudulently representing: (1) That there were no encumbrances upon the Oregon property except the contract of purchase held by Crowley which was being assigned to the plaintiffs; (2) that the value of Crowley's interest in the Oregon land was equal to the interest which they, the plaintiffs, possessed in the Everett property, to-wit, $2,900; and (3) that he, Burke, would, if requested within a reasonable time, exchange the twenty-acre tract for other property nearer to Salem worth $2,900. All of these charges are denied in the answer.

Since the disposition of the 15 assignments of error will require frequent reference to the evidence, we deem it advisable at this point to set forth a brief review of the evidence, more especially of that part which is favorable to the plaintiffs. Prior to the month of April, 1931, plaintiffs owned five lots, together with a dwelling house, garage and chicken coop standing thereon, in the city of Everett, Washington. Although the value of this property is the subject matter of dispute, nevertheless, competent, substantial testimony which the jury could properly believe indicates that its market value was about $4,500. It was encumbered with a $1,000 mortgage and the lien of unpaid taxes

and assessments amounting to $600. The plaintiff Robert Richer, a common laborer, 69 years of age, was described by his wife as "a wanderer". From the difficulty which he experienced in understanding and answering common questions, together with the fact that when he desired to communicate with others by letters he had someone else write the letters, we assume that his schooling was meager. Based upon the numerous errors in spelling and composition found in the wife's letters, the observation just made concerning her husband is possibly applicable to her also. In the early part of 1931 Richer came to Salem and told Burke of his desire to trade his Everett property for farm land in the vicinity of Salem. At that time one Thomas Crowley, whom Burke described as "a trader", possessed a contract whereby, upon the payment of $2,100 in annual installments of $200 to a corporation entitled American Fidelity Investment Company, that concern was obliged to give him a special warranty deed to the property. The twenty-acre tract aforementioned was a part of an eighty-acre tract which was subject to a mortgage of $4,500 in favor of the Federal Land Bank of Spokane, upon which $700 had been paid. Upon the $2,100 contract nothing whatever had been paid. The vendee named in it, Lin Phoenix, had assigned it to Crowley. The transaction between Crowley and Phoenix is not definitely disclosed by the testimony, but some of the witnesses seemed to think that Crowley had traded for it something worth about $500. Two farmers who own land in the immediate vicinity of this twenty-acre tract expressed the opinion that the 20 acres were not worth in excess of $40 an acre. Only Burke disputed their testimony. All of the tract except three and one-half acres is covered with stumps and small trees. In March

of 1931 Burke, accompanied by Crowley and Phoenix, took the plaintiff Robert Richer to see this twenty-acre tract. Richer testified that upon reaching the property "they told me there was $2,100" against it. And, referring to Burke, testified: "He said it was an even deal * * * for my property up in Everett." At that time Mrs. Richer was in Everett, and Burke assured Richer, so he testified, that if his wife, upon seeing the land, was dissatisfied with it he would exchange it for a ten-acre tract nearer to Salem and improved with a dwelling house. He told Richer that such a property was then available from a farmer who wanted a larger tract. Burke, assuming that the Everett property which he had never seen was worth $4,600, calculated, according to Richer's testimony, that the contemplated trade would yield the Richers $2,900 in value. In making this estimate, he included a cash payment of $300 to the plaintiffs by Crowley. According to Richer, Burke promised that upon a retrade, if such should be necessary, the plaintiffs would secure property of $2,900 value. March 26, 1931, Burke wrote to Mrs. Richer:

"Will Say. We hadent Vallued any of the property, we figured it out that it was a good deal for you all. And that each one would assume the others incumberences. Now the baces of the deal was valued like this. On the 20acr. Including The $300.00 Note and all. amts to $2955.00 against Your Place at $4500.00 Less $1600.00 Inc. which would leave Your equety.$.2900.00. So you Can see it is about an even brake."

Burke testified that when he made the calculations just mentioned he assumed the Everett property to be worth $4,600. From this he deducted the $1,600 of encumbrances, leaving a balance of $3,000. He admitted that he calculated the value of Crowley's interest in the twenty-acre tract by starting with $2,100 (the item

in Crowley's purchase contract) to which he added $600 (the amount which he said Crowley gave for the contract), making a total of $2,700. To this he added $300 cash which Crowley was supposed to pay to the Richers in order to effect an exchange of the two properties. After reviewing the above items and figures with Burke, plaintiffs' counsel asked him:

"Q. And that is the way it was figured out to both sides, wasn't it?

"A. Absolutely, yes.

"Q. That is what you are trying to tell Mrs. Richer in this letter which is marked Plaintiffs' Exhibit No. 4, isn't it?

"A. Yes, sir.

"Q. That is correct, isn't it?

"A. Yes, sir."

Thus it will be observed that he estimated the liability of $2,100 to the American Fidelity Investment Company as an asset, in the meantime calculating the land to be worth $2,700 although evidence tends to show it was worth no more than $800. In the meantime, he ignored the aforementioned mortgage of $4,500. The natural inference deducible from these representations that $2,100 was the only encumbrance against the twenty-acre tract is strengthened by a letter which Burke wrote to Mrs. Richer proposing this trade in which he declared:

"Now the way the deal is, Mr. Thomas Crowley, of Salem Ore. Takes Your Property at, 1826 Wallnut St Everet Washington . And assumes the 1600.00 Inc. and also to pay $300.00 as the difference in the places to yous. And Mr and Mrs Richer to take Over the contrac, from Mr Thomas Crowley on the 20 acrs and asume the $2100.00 balance on place,"

We have mentioned the fact that the plaintiff Robert Richer testified that before he executed the

deed to the Everett property Burke had promised that, if Mrs. Richer was dissatisfied upon viewing the twenty-acre tract, he would procure a trade upon a ten-acre tract nearer to Salem, improved with a house and possessed of a value of $2,900. Mrs. Richer supported this specification of the fraud allegations by testifying that upon viewing the property she had the following conversation with Burke:

"I said, 'I am greatly dissatisfied with the place. It aint like I thought it was.' I says, 'I am not satisfied and if I had known it was such a place as this—' I says, 'It is all stumps.' He says, 'These stumps can be taken out in a year or so. There will be no trouble to get them out.' I asked him if he promised Mr. Richer he would trade the place, I told him I wouldn't sign the deed unless he agreed to the second trade because I wouldn't pay such a mortgage as that was."

"Q. What did he say? A. He said 'Certainly I will.'"

It will be recalled that the Richers were supposed to receive $300 cash from Crowley. In lieu of that a $300 note secured by a second mortgage upon the Everett property was substituted. When Mrs. Richer arrived in Salem in May of 1931, Burke requested her to transfer this note and mortgage to the afore-mentioned American Fidelity Investment Company and sign a note for $100 as his commission. She described the incidents that occurred at that time in the following words:

"I told him (Burke) I wouldn't sign either one—I stopped when he put out the notes, I said, 'I won't sign either one unless you promise to do as you told Mr. Richer, trade that place for another.' He said 'Certainly I will.' He said, 'I will trade it, just let me know when you want it.' I said, 'I want it right off, I am not satisfied with that place.'"

At the conclusion of this conversation she signed the instruments. We shall not review the testimony of the plaintiffs wherein they swore that Burke refused to endeavor to effect a reexchange because he himself testified that he never had any intention of doing so:

"Q. Did you ever have any intention of reselling or reexchanging this contract on this Oregon property here for the Richers?

"A. I did not."

Not only did he testify that he never intended to effect a reexchange but he also swore, "I could not." It will be recalled that the 20-acre tract, as a part of a larger tract, was subject to a $4,500 mortgage and that the plaintiffs charge that this fact was concealed from them by Burke. The latter, in his brief as well as in one part of his testimony, claimed that he was ignorant of the existence of the $4,500 mortgage, and that hence his failure to disclose the $4,500 mortgage could not have been the result of a fraudulent intent. For instance, he testified: "I never told them there was no encumbrances on the place, in fact, I didn't know what was on the place at that time." Later he testified that when Richer expressed a desire to go to the American Fidelity Investment Company for the purpose of ascertaining the condition of the title, he asked Burke to accompany him. The following narrative, given by Burke, relates what occurred in the office of the investment company:

"I told them, 'Here is Mr. Richer, he is taking over this contract of Crowley's and before he goes into it he wants to know he is going to be protected, and we want to know all about what is against this place and all about it.' They went ahead and give us the following data."

"Q. Just relate what the following data was? A. Well they said there was a mortgage, a certain mort-

gage—a blanket mortgage that covered the whole thing
* * *."

Richer denied that he participated in the above-mentioned visit and denied any information about the mortgage. It will be observed, however, that the above charges Burke with full knowledge of the mortgage before he procured the Richers' signatures to the deed conveying the Everett property. The fact that Burke represented to the plaintiffs that there was no such mortgage can be readily seen, not only from the above-reviewed evidence, but also from one of his letters to Mrs. Richer wherein he stated: "You own the twenty acre track here."

After the plaintiffs had delivered to Crowley a deed for the Everett property he endorsed upon the American Fidelity Investment Company-Phoenix contract the following words:

"April 13, 1931.
"For value received I hereby sell and assign my rights, title and interest in this contract to Mrs. Sarah Richer and Robert Richer, her husband, of Everett, Washington, County of Snohomish."

He then signed and delivered it to the plaintiffs. The contract thus endorsed is all that the plaintiffs received.

■ In their first assignment of error the defendants contend that the trial judge abused his discretionary power in the supervision of the cross-examination by refusing to permit them to ask Robert Richer the number of times he had been in this state, and that at the same time he made statements prejudicial to the defendants. The portion of the cross-examination upon which the defendants rely is the following:

"Q. When did you first come to Oregon? I will start out with that.

"A. When I first came to Oregon? In 1916, I went to Mill City.

"Q. How long were you up there? A. Just say that over again.

"Q. How long were you in Mill City? A. I was there about three months.

"Q. And then where did you go? A. Back to Washington.

"Q. When did you next come back to Oregon? A. I couldn't tell you.

"Q. About when?

"THE COURT: I am at a loss to understand this line of cross-examination.

"MR. ALLAN CARSON: This man says he was utterly unfamiliar with Oregon land. I am entitled to show he has been in the state for years.

"THE COURT: That wouldn't make any difference, he might have been in the state for years and still not know—

"MR. ALLAN CARSON: I except to the Court's remarks, I think we are entitled to show it.

"THE COURT: I think the cross-examination in some respects is going to far, it is delaying the case.

"MR. ALLAN CARSON: We would like an exception to the Court's remarks.

"THE COURT: Very well, you can have all you want, I have my own idea about some things, I think the cross-examination in that respect is going too far afield, and taking up too much time.

"MR. ALLAN CARSON: Are we to be limited in putting on our case?

"THE COURT: No, but I am trying to get the case tried.

"MR. ALLAN CARSON: I will attempt to hurry, but some of the delay hasn't been ours."

We fail to find in the foregoing any ruling. It is possible that if the defendants had asked for one it would have been adverse, but this is conjecture. It is likewise possible that after having become acquainted with the purpose of counsel for the defendants as re-

vealed by their above-quoted remarks, the court would have required the witness to answer the question had defendants still desired an answer. Before reversing a judgment we ought to be reasonably certain that an adverse ruling was made. We find none disclosed by the above. To the contrary, the question of the defendants' counsel which followed the above colloquy, without interference by the presiding judge, indicate that, having become acquainted with defendants' purpose he was agreeable to the examination. We quote from the transcript the following:

"Q. You have a lot of relatives in Oregon, or some? A. Yes, I have a couple of nieces, is all.

"Q. What did you do at Mill City, what kind of work, did you work in the mill?

"A. I worked in the mill up there."

Later when the defendant Burke was testifying he declared that Richer had been in this state several times.

But if we could be warranted in believing that the above remarks constituted a ruling imposing a limitation upon the cross-examination, that alone would not be enough, for it is well established that the extent of the cross-examination rests within the discretion of the trial judge, and that his rulings will not be deemed ground for reversal unless he abused his discretionary power. In determining whether an abuse has been revealed, assuming that a ruling was made, let us determine whether the cursory knowledge of land values such as a common laborer could obtain by making visits in this state would defeat a recovery in an action where the visitor's agent made representations of value. By referring again to the defendants' questions, it will be observed that they did not inquire of Richer how many times he had been in the vicinity of this land, but

inquired concerning the entire state. Visits to Portland, to the semi-arid sections, to southern Oregon, to the timbered land, to the irrigated districts, etc., would yield no information concerning the value of this tract. Many of us, with our capacity for gaining information sharpened by experience in the legal profession, have visited repeatedly other parts of our state and of our nation without acquiring any knowledge whatever concerning land values in those sections. Again, it will be observed that the question placed no limitation upon the time element, yet within the period of our observation, real estate booms have come and gone, exerting drastic effects upon farm as well as city property. We cannot say that the trial judge abused his discretion when he spoke as he did. Moreover, it will be recalled that the defendant Burke was the witness's agent. It was Burke's duty to fully and frankly inform the plaintiffs concerning this property. The plaintiffs owed no duty to him to be on the alert lest he deceive them. They were not bound to investigate his statements. To the contrary, they could rightfully place confidence in any statements their agent made concerning this property: *Burgess v. Charles A. Wing Agency,* 139 Or. 614 (11 P. (2d) 811); *Hanson v. Johnson,* 143 Or. 532 (23 P. (2d) 333); *Miranovitz v. Gee,* 163 Wis. 246 (157 N. W. 790); *Firebaugh v. Trough,* 57 Ind. App. 421 (107 N. E. 301); *Cheney v. Gleason,* 125 Mass. 166; *Prigge v. Selz,* 134 Minn. 245 (158 N. W. 975). A nonresident, even though possessed of some knowledge of values, would be likely to set it aside in favor of the opinions of an agent who, like Burke, resided in the locality where the land is situated. If the cross-examination had shown that Richer had somehow become familiar with land values in the Willamette valley, that circumstance would not have entitled the defend-

ants to a nonsuit, provided the plaintiffs preferred to rely upon his judgment of values rather than upon their own information. Thus, it is evident that the information which the defendants sought from the witness was not determinative of the action.

██ In holding that this assignment of error reveals no merit, we base our conclusion upon the three following propositions: (1) No adverse ruling was made; (2) the identical subject matter of cross-examination was at once pursued after the colloquy had terminated, thus showing acquiesence in the court's attitude; and (3) assuming that an adverse ruling was made, it does not appear that the trial judge's discretionary power was abused. Disposing of the second element of this assignment of error which is predicated upon words spoken by the trial judge to defendants' counsel and not to the jury, we fail to find in these remarks anything which an intelligent juror could have deemed an indication of the judicial attitude upon the merits of the cause. We find no error disclosed by these contentions.

█ The second assignment of error challenges a ruling made by the trial judge which sustained the plaintiffs' objection to evidence offered through the defendants' witness Mortland, an Everett real estate broker, who, according to the defendants' offer of proof, would have testified that the only sales of real property in the neighborhood of plaintiffs' Everett property were made upon foreclosure of delinquent tax and special assessment liens, and would have stated the prices which had been obtained upon the sales. The plaintiffs had testified that a home in the immediate vicinity of their property had been sold at private sale, and also expressed their opinions of the market value of their

property. In arguing that the court erred when it excluded the above evidence, the essence of the defendants' contention is stated in the following words quoted from their brief: "It is logically inferable that since the only sales were forced sales, there was no market." This contention might possess merit if the same witness had not given (upon direct examination) the following testimony:

"Q. Do you know what the reasonable market value of property in that locality, and particularly this property, was in the latter part of, say, March 30, 1931?

"A. I think so, yes, sir.

"Q. What was the reasonable market value of this house and these lots?

"A. $2,000.00.

"Q. Do you remember what, at that time, was the reasonable market value of lots similar in character in that immediate vicinity? A. $50.00."

Thus, the defendants themselves proved that the property possessed a market value.

■ Generally, the prices obtained upon the sale of property in the foreclosure of tax and assessments lien are not admissible as evidence of market value: 22 C. J., Evidence, p. 181, section 129. These forced sales conducted under conditions which bear but slight semblance to the ordinary disposition of property do not reveal true market value. This assignment of error reveals no merit.

■ The third assignment of error is based upon the denial of the defendants' joint motion for a directed verdict. In support of this contention, the defendants argue that some of the averments of the complaint charging fraud are insufficient, and that the proof substantiates none of the three specifications of fraud alleged in the complaint. No direct contention is made

that the complaint fails to state a cause of action, and since its sufficiency was tested by neither motion nor demurrer we shall dispose of this contention with the expression of our belief that the averments of the complaint are sufficient. Irregularities in procedure which do not affect the substantial rights of the appellant are insufficient as grounds for a reversal: Section 7-510, Oregon Code 1930. In disposing of the second element of this assignment of error, that is, the sufficiency of the proof, we shall not again review the evidence. We have done so once and that will have to suffice for the purposes of disposing of this assignment of error. We believe that competent, substantial testimony supports all three charges of fraud. However, the defendants contend that the second charge of fraud is not supported by evidence because, so they contend, a mere expression of opinion cannot support an action of this character. It is true, as was said in *Castleman v. Stryker*, 107 Or. 48 (213 P. 436), if parties to a transaction are on equal footing, have equal means of knowledge and no fiduciary relationship exists between them, fraud cannot be based on a mere representation of value. But if the speaker has superior knowledge and is the agent of the one to whom he makes the value representation, his expression of opinion, if made for the purpose of deceiving, constitutes remediable fraud: *Shute v. Johnson*, 25 Or. 59 (34 P. 965). Hence, we deem this contention lacking in merit. The defendants also contend that the third specification of fraud which is based upon the proposition that Burke promised to make a resale is insufficient. Our decision in *Burgess v. Charles A. Wing Agency*, supra, and the authorities there reviewed, hold that a fraudulent promise which the promisor never had any intention of fulfilling, and which he employed for the pur-

pose of deceiving the person to whom it was made, is capable of sustaining an action of this character. It follows from the above that this assignment of error reveals no merit.

■ The fourth assignment of error is predicated upon the ruling of the circuit court which denied the motion made by the defendant The Metropolitan Casualty Insurance Company of New York for a directed verdict. This motion is based upon the contention that the evidence fails to disclose that the condition of the bond signed by it as surety has been breached. The material part of the bond is as follows:

"If the said B. S. Burke shall perform his duties and conduct his business in accordance with the requirements of said chapter 423, General Laws of Oregon 1929, then this obligation shall be void; otherwise to remain in full force and effect."

The Session Law mentioned in the bond is codified as section 63-720, Oregon Code 1930. It requires applicants for a real estate broker's license to furnish a $2,000 bond "conditioned that the applicant shall perform his duties and conduct his business in accordance with the requirements of this act." The surety argues that the amended complaint does not allege, and that the evidence does not prove, that Burke "failed in any respect to perform his duties or conduct his business in accordance with the requirements" of the above-mentioned section of our laws. In *Hansen v. Johnson,* 143 Or. 532 (23 P. (2d) 333), we held that the surety upon undertakings required by this statute was liable when the broker was guilty of fraud. However, the particular contention now advanced was not made in that case. Section 63-727, Oregon Code 1930, which expresses in part the broker's duties states that his license shall be revoked whenever the real estate com-

missioner is satisfied that the broker is guilty of "(a) making any substantial misrepresentation; or (b) making any false promises of a character likely to influence, persuade or induce; (c) * * *" We believe that these provisions of our laws outline the course of conduct of the broker and that a failure to comply with them constitutes a breach of the conditions of the bond. We find no merit in this contention.

The fifth assignment of error is based upon a contention that the circuit judge commented upon the evidence in instructing the jury. He employed the terms, "This is a case based on fraud" the instructions continued: "The allegations of the complaint raise the question as to whether fraud has been perpetrated upon these plaintiffs by the defendant and in this case the burden of proof is upon plaintiffs to establish the truth of the allegations of their amended complaint." Immediately after using the second above-quoted expression, the instructions declared: "The law requires that fraud be established by clear and convincing proof, convincing you of the truth of the allegations of * * *." The instructions repeatedly stated that the burden of proof was upon the plaintiffs and that fraud must be established by clear and convincing proof. It is evident that the quoted passages were not comment upon the evidence, but were merely a means of stating the nature of the cause of action.

Eight of the ten remaining assignments of error are predicated upon contentions that the trial judge erred in giving to the jury the portions of his instructions which are the subject matter of these attacks, and the remaining two are based upon the theory that he erred in failing to subscribe to the requested instructions mentioned in these two assignments of error. The defendants contend that some portions of the criticized

instructions erroneously state the facts disclosed by the evidence, and that the other portions erroneously state principles of law applicable to the controversy. We shall dismiss all but two of these ten contentions with the statement that the foregoing review of the evidence and the principles of law above stated render it unnecessary for us to review one by one these eight assignments of error. We have, however, considered all of these contentions carefully. One of the two remaining assignments of error which we have excepted from the statement just made challenges an instruction wherein the trial judge stated to the jury:

"While a party is supposed to investigate and ascertain the truth of statements made to him, in so far as he is able to do so, yet this does not preclude such party from recovery for fraud if he proves fraud by a preponderance of the evidence, if he also proves by a preponderance of the evidence he was prevented or dissuaded from making such investigation by reliance upon false and material representations made to him by the party charged, to his damage."

As will be recalled, Mrs. Richer did not see the 20-acre tract until after the transaction had been concluded, relying solely upon the representations of Burke. Richer saw the property once but testified that, knowing nothing about land values in Marion county, he relied exclusively upon Burke, adding, "He told me he was a good Christian and didn't want to do wrong to anybody." Further showing his confidence in the agent whom he had employed, he added, "I supposed the real estate man ought to tell me. I told him everything I knew about my place". We believe that this instruction is fully warranted by the proof and that it correctly states the principles of law applicable to the situation disclosed by the evidence.

16. In their remaining assignment of error the defendants contend that $2,000 is the limit of liability upon the bond, and that hence the court erred when it added the $250 attorney's fee. Section 46-134, Oregon Code 1930, which makes provision for the recovery of an attorney's fee in actions of this character, provides that the attorney's fee shall be in addition to the amount otherwise recoverable. Hence, this assignment of error reveals no merit.

Having disposed of all issues presented by the appellants adverse to them, it follows that the judgment of the circuit court will be affirmed.

KELLY, CAMPBELL and BAILEY, JJ., concur.

---

BELT, J. (dissenting): This action is based upon fraud alleged to have been committed by the defendant Burke, a real estate broker, employed by plaintiffs to exchange their property in Washington for certain farm property in Marion county, Oregon. The defendant insurance company was made a party defendant by reason of being a surety on Burke's statutory bond.

Plaintiffs were the owners of five lots in Everett, Washington, of an alleged value of $4,500, with an encumbrance thereon of $1,600. Through the services of Burke, this property was exchanged for 20 acres of land in Marion county. It is alleged that plaintiffs were induced to make this exchange on account of false and fraudulent representations in substance as follows: (1) That Burke represented the value of the Marion county property to be equal to the value of plaintiff's property in Washington; (2) that Burke represented that the Marion county property was encumbered only in the sum of $2,100; and (3) that Burke, without any intention of performance, represented that he would resell or exchange the contract of sale on the Marion

county land for other property near Salem, Oregon, so that plaintiffs would realize the sum of $2,900, being the amount of their equity in the lots owned by them in Washington.

Plaintiffs allege that these representations were false and fraudulent in that (1) The property in Oregon had no value above the encumbrances thereon and was not equal in value to plaintiffs' equity in the Washington property; (2) that the 20-acre tract in Oregon was not free of encumbrance except the contract of sale for $2,100—to be assigned to plaintiffs— but was also encumbered by a mortgage of $3,800; and (3) that Burke had no intention of reselling or exchanging the property but made such promise to induce plaintiffs to enter the agreement of exchange.

The cause was submitted to a jury and a verdict returned against defendants for $2,500 with an award of $250 as attorney fees for the prosecution of the action. From the judgment based thereon, the defendants appeal.

It is urged that error was committed in limiting the cross-examination of the plaintiff Robert Richer relative to his knowledge of land values in Marion county. This plaintiff had testified that he did not know "anything about land values here in this county". The record discloses the following cross-examination and the comments of the court in reference thereto:

"Q. When did you first come to Oregon? I will start out with that.

"A. When I first came to Oregon? In 1916, I went to Mill City.

"Q. How long were you up there? A. Just say that over again?

"Q. How long were you in Mill City? A. I was there about three months.

"Q. And then where did you go? A. Back to Washington.

"Q. When did you next come back to Oregon? A. I couldn't tell you.

"Q. About when?

"THE COURT: I am at a loss to understand this line of cross-examination.

"MR. ALLAN CARSON: This man says he was utterly unfamiliar with Oregon land. I am entitled to show he has been in the state for years.

"THE COURT: That wouldn't make any difference, he might have been in the state for years and still not know—

"MR. ALLAN CARSON: I except to the Court's remarks, I think we are entitled to show it.

"THE COURT: I think the cross-examination in some respects is going too far, it is delaying the case.

"MR. ALLAN CARSON: We would like an exception to the Court's remarks.

"THE COURT: Very well, you can have all you want. I have my own idea about some things, I think the cross-examination in that respect is going too far afield, and taking up too much time.

"MR. ALLAN CARSON: Are we to be limited in putting on our case?

"THE COURT: No, but I am trying to get the case tried.

"MR. ALLAN CARSON: I will attempt to hurry, but some of the delay hasn't been ours."

Plaintiffs charged that the defendant Burke had falsely represented the value of the Marion county property, that they "had no knowledge or information regarding land values in and about Salem, Oregon, and that they relied upon the judgment and statements of Burke with reference to the value of the Marion county property". Did the defendants not have the right to show that plaintiffs, in fact, relied upon their own judgment? Were they not entitled to show that plaintiffs did, in fact, know something about land values in this state? While much discretion is vested in trial courts relative to the extent of the cross-examination, we are constrained to hold that there was an

abuse thereof in the instant case. A liberal rule should be followed where fraud is charged. Furthermore, the comments of the trial judge in the presence of the jury could result only in prejudice to the defendants. Counsel for plaintiffs made no objection to the cross-examination realizing full well that it was a proper line of inquiry. The right to cross-examine is a substantial one and when it pertains to a vital issue of the case we think reversible error results in its denial.

We think error was also committed in the giving of the following instruction:

"While a party is supposed to investigate and ascertain the truth of statements made to him, in so far as he is able to do so, yet this does not preclude such party from recovering for fraud, if he proves fraud by a preponderance of the evidence, if he also proves by a preponderance of the evidence he was prevented or dissuaded from making such investigation by reliance upon false and material representations made to him by the party charged, to his damage."

The record fails to disclose any evidence that the defendants, or either of them, said anything to prevent or dissuade plaintiffs from making an investigation of the property in Marion county. As a matter of fact, Robert Richer did inspect the same before entering into the contract of exchange. As an abstract proposition of law, the instruction may be correct, but it has no application to the facts involved in this case. We find nothing to the contrary in *Aitken v. Bjerkvig,* 77 Or. 397 (150 P. 278); *Paulson v. Kenney,* 110 Or. 688 (224 P. 634), and *Greig v. Interstate Inv. Co.,* 121 Or. 15 (253 P. 877).

The judgment of the lower court should be reversed and the cause remanded for a new trial.

RAND, C. J., and BEAN, J., concur in this dissenting opinion.