Argued September 11; reversed October 22, 1935

# BALL ET AL. *v.* ASSOCIATED OIL COMPANY

## (50 P. (2d) 125)

*Clarence J. Young*, of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellant.

*W. C. Winslow*, of Salem (W. W. McKinney, of Salem, on the brief), for respondents.

BELT, J. Plaintiffs, for several years, have owned and operated a gasoline service station at Turner, Oregon. On February 21, 1929, the plaintiffs leased the premises to the defendant Associated Oil Company for a term ending February 20, 1932, which rental was extended, under the right of option invested in the lessee, to February 20, 1934. Under the terms of this lease, the defendant oil company agreed to pay to plaintiffs as rental a sum equal to 3 cents for each gallon of gasoline sold to plaintiffs by defendant during the preceding month. On the same day, the parties entered into a license agreement whereby the defendant oil company, as licensor, granted to the plaintiffs, as licensees, the right to use such property solely for the purpose of reselling therefrom to consumers petroleum products purchased by plaintiffs from the defendant oil company. In this license agreement plaintiffs agreed to pay licensor for all gasoline the licensor's "posted market price for gasoline (including tax), to consumers generally at place of delivery on the date of delivery (said posted price as of the date hereof

being 19 cents for ASSOCIATED GASOLINE and 22 cents for ASSOCIATED ETHYL GASOLINE), less LICENSOR's posted differential to resellers generally at place of delivery on date of delivery (which differential on date hereof is four cents (4c) per gallon), it being agreed that said differential shall be not less than four cents (4c) during the period of this License''.

Plaintiffs allege that, pursuant to the terms of the lease and license agreements, they purchased from the defendant oil company between and including the 1st day of January, 1933, and the 31st day of December, 1933, 20,748 gallons of gasoline and resold the same from said service station and that the defendant oil company has failed and refused to pay the amount due plaintiffs, save and except the sum of $829.92, leaving a balance due and owing in the sum of $622.44.

There is no dispute between the parties as to the execution of the lease and license agreements, nor as to the amount of gasoline which plaintiffs purchased for resale. The controversy arose over a modification agreement alleged to have been executed on May 20, 1929, whereby the plaintiffs, commencing June 1, 1929, agreed to pay the oil company for all gasoline purchased at the ''posted tank wagon price (including tax) as posted by the majority of the five principal marketing companies at their principal place of business, covering Gasoline for sale at place of delivery on date of delivery, on which basis as of date hereof you would pay 21 cents per gallon for ASSOCIATED GASOLINE and 24 cents per gallon for ASSOCIATED ETHYL GASOLINE'', and the defendant oil company, commencing on June 1, 1929, would pay as rental a sum equal to 4 cents for each gallon of gasoline sold by it to plaintiffs for resale from said premises.

Defendant alleges that, during the entire period referred to in plaintiffs' complaint, it sold gasoline to

the plaintiffs on the basis of the posted tank wagon price as defined in the modification agreement, and that it has paid as rental 4 cents on each gallon of gasoline purchased by plaintiffs for resale, in accordance with the terms of the modified lease agreement. Hence, defendant avers that plaintiffs have been paid in full.

As a second affirmative defense, defendant alleges in substance that, during the period in controversy, it paid to plaintiffs rentals in the form of credit allowances deducted from the posted tank wagon price of gasoline, the net resulting price being endorsed on invoices executed by plaintiffs and defendant at the time of delivery and that at said times there was full settlement, accord and satisfaction of all claims now made the basis of plaintiffs' action.

Plaintiffs, in their first, further, and separate reply, allege in substance that their signatures to the modification agreement were procured through the fraudulent representations of the defendant that, under the terms thereof, plaintiffs would obtain for the sale of gasoline 8 cents per gallon (4 cents per gallon under the leasing agreement and 4 cents per gallon under the license agreement) instead of 7 cents per gallon previously received under the original lease and license agreements; that these representations were false in that defendant never intended to pay 8 cents and that it in fact, under the pretense that the posted tank wagon price had been raised, reduced the amount which plaintiffs were receiving from 7 cents to 4 cents per gallon.

As a second, further, and separate reply, plaintiffs allege in substance that at the time the modification agreement was presented to plaintiffs it was not signed by the defendant and that it was not to become effective until signed by defendant and one of the triplicate

copies thereof returned to plaintiffs; that defendant has at all times refused and continues to refuse to sign or return the alleged modification agreement, for which reason the alleged modification agreement has not become effective notwithstanding plaintiffs' signatures thereon.

Plaintiffs, for a third and separate reply to the defense of settlement, accord and satisfaction, allege in substance that their signatures to delivery slips for gasoline were obtained as the result of a threat by defendant that, unless plaintiffs signed the same, it would refuse to deliver any gasoline to plaintiffs and would not permit any other gasoline company to deliver gasoline to them.

On the issues thus briefly stated the cause was submitted to a jury and a verdict returned in favor of plaintiffs in the sum of $622.44. Defendant appeals.

The principal assignment of error is based upon the refusal of the trial court to allow defendant's motions for nonsuit and directed verdict. Counsel for plaintiffs frankly concede that, if the modification agreement be given force and effect, no cause of action exists. The solution of our problem therefore depends upon the validity or invalidity of this agreement. Plaintiffs challenge it upon two grounds: (1) Fraud, and (2) failure of defendant to sign and deliver copy thereof to plaintiffs, thus rendering it ineffective.

Were plaintiffs induced to sign the modification agreement through the fraudulent representations of the defendant? It is observed that the modification agreement purports to change the rental paid to plaintiffs from a sum equal to 3 cents for every gallon purchased for resale to a sum equal to 4 cents for every gallon so purchased, and the original license agreement

was so changed that, instead of having a four-cent per gallon differential from the posted market price, plaintiffs were obliged to purchase gasoline at the posted tank wagon price as established by a majority of the five principal marketing gasoline companies. In other words, under the modification agreement plaintiffs received as rental an additional sum equal to 1 cent for every gallon of gasoline purchased and, in addition, plaintiffs were granted the right to purchase gasoline at the posted tank wagon price. At the effective date of the modification agreement the market price of Associated gasoline was 25 cents per gallon and the posted tank wagon price, as stated in the instrument itself, was 21 cents per gallon. Hence, under such market conditions, plaintiffs received a differential of 4 cents under the license agreement and an additional sum of 4 cents per gallon as rental. Later, however, the difference between the posted tank wagon price and the market price was not nearly so great and, under such circumstances, the differential allowed plaintiffs was likewise diminished. Defendant asserts that the rise in the posted tank wagon price was the result of competition. Plaintiffs assert it was merely part of a plan to cheat and defraud them.

In our opinion there are two reasons why the charge of fraud against the defendant oil company can not be sustained as a matter of law: (1) The alleged representation that, under the modification agreement, plaintiffs would receive an aggregate differential of 8 cents per gallon, instead of 7 cents per gallon as provided in the original lease and license agreements, concerns only the legal effect of the modification agreement; (2) such representation does not constitute legal fraud because it is of a promissory nature, its performance being dependent upon the action of third parties.

■ The plaintiffs were experienced gasoline dealers and were transacting business with the defendant oil company at arm's length. No fiduciary relationship existed. They had purchased gasoline from the defendant under similar contracts for a period of 12 years and, without doubt, had a fair understanding of their terms. It is admitted that the modification letter or agreement in question was read by plaintiffs before they affixed their signatures thereto. Hence plaintiffs had no right to rely upon any representation of the defendant as to the legal effect of the instrument they signed. It spoke for itself in plain and unambiguous language. If the rule were otherwise there would be no certainty or stability in written contracts. Assuming that the alleged representation was made, it concerned a matter of law and not one of fact: *Wicks v. Metcalf*, 83 Or. 687 (163 P. 434, 163 P. 988, L. R. A. 1918A, 493); *McFarland v. Hueners*, 96 Or. 579 (190 P. 584); *Associated Oil Co. v. La Branch*, 139 Or. 410 (10 P. (2d) 597). In the La Branch case an identical modification agreement was involved. The defendant therein offered some evidence tending to show that the oil company representative had induced him to sign the agreement through the fraudulent representation that "It wouldn't absolutely interfere with my contract." While no issue of fraud was involved under the pleadings, this court, speaking through Mr. Justice ROSSMAN, nevertheless took occasion to say:

"If the representative of the plaintiff obtained respondent's signature by misrepresenting the legal effect of the instrument, his deceit 'was at most a misrepresentation as to the law governing the transaction,' * * *." Citing in support thereof the above cases and in addition thereto 12 R. C. L. 295; 26 C. J. 1210.

It may be that this declaration of the law is subject to the criticism of counsel for respondent that it is dictum. Nevertheless, we think it is a sound statement of law which may well be applied to the facts in this case.

As a general rule fraud can not be predicated upon statements promissory in their nature and relating to future actions. We are not unmindful of the exception to the general rule, recognized in this and other jurisdictions, that fraud may be predicated upon a promise accompanied by a present intention not to perform it: *Richer v. Burke,* 147 Or. 465 (34 P. (2d) 317); *Burgess v. Charles A. Wing Agency,* 139 Or. 614 (11 P. (2d) 811). However, this exception to the general rule can have no application to the facts in this case for the reason that it appeared from the modification agreement itself that the fulfilment of any promise relative to the differential allowed plaintiffs, aside from that allowed on account of rental, depended not upon the action of the defendant but upon the posted tank wagon price as determined by a majority of the five principal marketing gasoline companies. There is no contention that collusion and fraud existed between the defendant company and the other principal companies. *Richer v. Burke,* supra, and *Burgess v. Charles A. Wing Agency,* supra, do not support the legal contention of respondent, as in those cases a fiduciary relationship existed between the parties, and the performance of the alleged promises therein was not dependent upon the conduct of third parties. That actionable fraud can not be based upon erroneous predictions as to the conduct of third parties, see *Pace v. Edgemont Inv. Co.,* 138 Or. 32 (4 P. (2d) 633); *J. C. Corbin Co. v. Preston,* 109 Or. 230 (212 P. 541, 218 P. 917); 26 C. J. 1089.

■ We pass now to the plaintiffs' second defense to the modification agreement, viz, that it was not signed by the defendant company and a copy delivered to the plaintiffs—hence no contract. It is admitted that plaintiffs signed the agreement. Furthermore, the writing was introduced in evidence showing execution on the part of the defendant company. There is dispute in the testimony as to whether a copy was delivered to plaintiffs. Assuming, but not deciding, that the defense of fraud, seeking rescission of the contract, and the defense of nonexecution are not inconsistent defenses, we think the conduct of the plaintiffs precludes reliance upon the second defense. Gasoline was delivered pursuant to the terms of the modified agreement and was so accepted by the plaintiffs, as shown by the delivery slips. If there has been a performance of the contract surely plaintiffs will not, under such circumstances, be permitted to say the contract shall have no force or effect because there was no delivery of a copy to them. It is sufficient to say that they acted pursuant to its terms and are bound thereby. It is true that plaintiffs assert they were obliged to sign the delivery slips under duress or so-called business compulsion, but, in our opinion, the evidence fails to establish duress within the meaning of the law. Can it be that plaintiffs, throughout these numerous deliveries, were acting under such compulsion that they were incapable of exercising free will?

The conclusions above reached make it unnecessary to consider other assignments of error.

The motion of the defendant company for a directed verdict should have been allowed. It follows that the judgment is reversed and the action is dismissed.

Rossman, J., not sitting.