Argued March 17, affirmed May 11, 1955

# ANDREWS *v.* ROY MOTORS, UNITED FINANCE COMPANY

283 P. 2d 652

*Murley M. Larimer,* Molalla, argued the cause for appellant.

*Dwight L. Schwab,* Portland, argued the cause for respondent United Finance Company.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

LUSK, J.

This is an action to recover damages based on alleged false and fraudulent representations made by the defendants to the plaintiff. A judgment of involuntary nonsuit was entered as to both defendants. Plaintiff appeals from the judgment in favor of United Finance Company alone.

The amended complaint on which the case was tried alleged that the defendants, acting through United Finance Company, represented

"that one Mike M. Struloeff was in default 2 weeks on one payment to defendant United Finance Company on a certain chattel mortgage on a certain caterpillar type tractor, described as a TD9 Caterpillar, TDC12202T7BM with blade, and that it would be satisfactory to defendant United Finance for plaintiff to buy said Struloeff's equity and pay

a payment on the 15th of June and another payment in two weeks thereafter and then to continue with the contract."

It was further alleged that, relying on such representations, plaintiff "was thereby induced to buy from said Mike M. Struloeff the above described tractor and the plaintiff, in reliance on defendant's representations, did, on the day last above mentioned, pay to *the* Mike M. Struloeff $500.00 as a down payment on said tractor."

The representations were alleged to be false and material in that "Mike M. Struloeff was in greater default than stated above and not in good credit standing with the defendants." The complaint further alleged:

"That on the 17th day of June, 1952, defendant Roy Motors did reclaim and repossess the said tractor for the reason that said Mike M. Struloeff was in greater default on the aforesaid chattel mortgage and plaintiff has wholly lost same by reason of this."

There are appropriate allegations of damage.

The evidence is to the following effect: Plaintiff, the owner and operator of a small sawmill, entered into negotiations with one Mike M. Struleoff for the purchase of a TD9 Caterpillar tractor on which United Finance Company held a mortgage that had been assigned to it by Roy Motors, which sold the tractor to Struloeff. A few days before June 4, 1952, Struloeff showed Andrews the book in which his payments on the mortgage to United Finance were recorded. The book disclosed that the mortgage called for 12 monthly payments of $399.90 each beginning January 15, 1952; that the balance owing on December 5, 1951, was $4798.80; and that two payments of $399.90 each had been made, one on February 4, 1952, the other on May

2, 1952, and that there was a balance owing of $3629.83. Struloeff told Andrews that the book was not up to date, that all except one of the payments then due had been made, but that two payments which had been made had not been recorded. On the morning of June 4, 1952, Andrews telephoned to the office of United Finance Company in Portland for the purpose of verifying the state of the Struloeff account. He was referred, according to his testimony, by the girl who answered the phone to Herbert W. Davis, manager of the company's contract department. The following is his account of his conversation with Davis:

"A I said, 'I am making a deal with Mr. Struloeff,' and asked him if it would be O.K. if I made a payment about the 15th.

"Q Of what?

"A Of June, and then another one about two weeks later. First, he O.K.'d the first payment, and then I asked him if that would be O.K. And I said, 'I understood it is slightly overdue now,' and I said, 'Would it be caught up on the third payment, that the third payment would be on the right date?' I said, 'Would it be caught up then? Would that be O.K.?' And he said, 'Yes, it would,' and that was just about the extent of the conversation.

"Q The third payment on July 15th?

"A Yes, that's right."

Andrews further testified that he told Davis that he understood that the contract was two weeks overdue, and that he asked Davis if he could make a payment in two weeks and another in two more weeks "and according to the figures, it would be up-to-date" and that Davis said that that would be "O.K." Following this conversation, Andrews went to his attorney's office and had a contract for the purchase of the tractor drafted. This contract was executed on June 4 by plaintiff and Struloeff. Under its terms Andrews agreed

to pay Struloeff $1500.00, of which $500.00 was paid at the time of the execution of the instrument, and to make all payments when due under the chattel mortgage to United Finance. The agreement recited the amount of each payment under the mortgage, $399.90, and the amount of the balance owing, $3629.83. The plaintiff admitted that this last figure was taken from Struloeff's payment book.

It is conceded that as of June 4, 1952, five payments had become due and only three had been made, and it is the undeniable fact that if $3629.83 was the balance owing on that date no more than three payments could have been made. Two payments were then in default. On June 16 the plaintiff, through his brother, tendered a check for $399.90 to United Finance at its office. Mr. Davis, to whom the check was tendered, refused to accept it, stating that there were three payments past due, and he could not accept one installment. On June 17 the defendant Roy Motors repossessed the tractor on account of the default. On June 18 Roy Motors paid to United Finance the balance owing on the mortgage and took a reassignment thereof.

■ Among the elements of actionable fraud, proof of which is essential to recovery, are that the plaintiff had the right to rely and did rely on the alleged false representations. *Conzelman v. N. W. P. & D. Prod. Co.*, 190 Or 332, 350, 225 P2d 757. The Circuit Court put its ruling on the ground that there was a failure of proof in this regard. Defendant United Finance also contends that there is no evidence of an intent to deceive on the part of Mr. Davis in making the statements attributed to him by the plaintiff in his conversation over the telephone. That is an exceedingly close question. Certainly, there is nothing in the record whatever to suggest that Davis had any reason for giving a false answer to the plaintiff's inquiry. He

was talking to a man of whom he had never heard about a routine matter relating to the business of his employer. It could be expected of him that he would answer Andrews' questions truthfully if he undertook to answer them at all, but where is the ground for believing that he spoke with intent to deceive, rather than that he simply made a mistake? We leave the question unanswered, but we have thought it well to ask it lest silence on the subject might be taken as indicating approval of plaintiff's contention that the evidence here is sufficient proof of a knowingly false representation made with intent that it should be acted upon by the plaintiff.

■ On the question of reliance on the allegedly false representation we think that the trial judge was clearly right in granting a nonsuit. The purpose of Andrews' telephone call to United Finance was to find out whether the Struloeff account was delinquent, and, if so, to what extent. He was told, according to the allegations of the amended complaint, that Struloeff was in default two weeks on one payment. His testimony supports that allegation. The charge that he was also told that it would be satisfactory to United Finance if he should buy Struloeff's equity and make a payment on June 15, and another payment within two weeks thereafter, may be put out of view, since it amounts to nothing more than a promise which, it is neither alleged nor proved, was made with the then intention on the part of United Finance not to keep. See *Conzelman v. N. W. P. & D. Prod. Co.*, supra, 190 Or 351. It should be observed that the only particular in which the plaintiff alleged that the representations were false was that Struloeff "was in greater default than stated above and not in good credit standing with the defendant."

■ After the telephone conversation, and on the

same day, and before plaintiff had paid any money to Struloeff, he executed a contract in writing with Struloeff for the purchase of the tractor, which recited that the balance owing on the contract was $3,629.83, a figure taken from Struloeff's payment book. As previously stated, the payment book also showed that the original balance was $4,798.80 and the agreed monthly payments $399.90 each, the first payment to be made January 15, 1952. On June 4, 1952, therefore, five monthly payments had become due. If only one of these was delinquent and four, amounting to approximately $1600.00, had been paid, the balance would have been not to exceed $3,198.00. Plaintiff had all this information before him when he signed the contract, and must be conclusively presumed to have known that the information he received from Davis was incorrect. For this is not a case where some fact is casually brought to the plaintiff's attention; it is a case of the formal acknowledgment by him in a written instrument of the existence of a fact which is utterly inconsistent with his contention that he was deceived. In that posture of affairs it must be concluded as matter of law that plaintiff did not rely on what Davis told him, and that proof of an essential element in his case is wanting. *Fleishhacker v. Portland News Pub. Co.*, 158 Or 476, 483, 77 P2d 141; *J. C. Corbin Co. v. Preston*, 109 Or. 230, 244, 212 P 541, 218 P 917; 37 CJS 268, 270, Fraud §§ 27 b, 29.

The judgment is, therefore, affirmed.