**KAUFMAN INVESTMENT CORPORA-TION, a California Corporation, Appellant,**

v.

**Carlos P. JOHNSON, Emmer L. Johnson, Joan Bueermann, Donald H. Bueermann, Stonegate Farms, Inc., a dissolved Oregon Corporation, and Johnson-Bueermann Investment Co., a partnership, Appellees,**

v.

**K.B.H. RANCH, INC., an Oregon Corporation, Mayflower Farms, an Oregon Corporation, Perry J. Bradford, Jim Wood, dba Woody's Automotive and John Doe, a lessee, Additional Defendants on Counterclaim.**

No. 77–3561.

United States Court of Appeals, Ninth Circuit.

June 30, 1980.

Rehearing Denied Aug. 6, 1980.

Don Erik Franzen, Los Angeles, Cal., argued for appellant; Hertzberg, Koslow & Franzen, Los Angeles, Cal., William G. Sheridan, Portland, Or., on brief.

James N. Westwood, Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., for appellees.

Before KILKENNY and WALLACE, Circuit Judges, and JAMESON, District Judge.*

KILKENNY, Circuit Judge:

This is an appeal from a summary judgment in favor of appellees foreclosing a mortgage and a security agreement, and denying appellant's summary judgment motion for recision of the contract for the sale of the property and for damages on the grounds of fraud and misrepresentation.[1]

Our study of the pleadings and the affidavits in support of and against the respective motions for summary judgment convinces us that there is no genuine issue of material fact for trial and that Magistrate Leavy's decision as approved by the district court is fully supported by the record. The decision reads in pertinent part:

"On September 4, 1973, defendants [appellees] entered into a contract to sell certain land in Oregon known as Stonegate Farm to KBH Ranch, Inc., plaintiff's [predecessor][2] in interest. On October 22, 1974, the defendants, plaintiff [appellant] and KBH Ranch, Inc. entered into an agreement modifying the earlier contract. The plaintiff and KBH Ranch, Inc. made payments according to the terms of the contract through October of 1976. No payments were made in November and December of 1976, or in January of 1977. On January 10, 1977, plaintiff filed this action in federal court.

"Count I of plaintiff's complaint is an action for rescission, based on plaintiff's allegation that defendants made certain misrepresentations to plaintiff concerning the suitability of Stonegate Farm for subdivision development. In the alternative, plaintiff sues in Count II for fraud, alleging that at the time defendants made the alleged misrepresentations they either knew they were false or made them recklessly without knowledge as to their truth or falsity.

"Pointing to the fact plaintiff is in default, defendants have filed a counterclaim based on a mortgage and security agreement given by KBH Ranch, Inc. in connection with the sale of the property. Defendants also contend that plaintiff has converted certain items of personal property in which defendants have a security interest. Defendants now move for summary judgment on plaintiff's claims against them and on their own counterclaims.

"Whether the plaintiff seeks rescission based on a material misrepresentation, or damages based on fraud, it must prove as one of the required elements under either theory that it acted in justifiable reliance on the representations made by defendants. *Dahl v. Crain*, 193 Or. 207, 229, 237 P.2d 939 (1951); *Andrews v. Roy Motors, United Finance Company*, 204 Or. 429, 433, 283 P.2d 652 (1955); *Brown et ux v. Hassenstab et ux*, 212 Or. 246, 254, 319 P.2d 929 (1957).

"*As defendants' exhibit B shows, Harrison Hertzberg, agent and attorney for KBH Ranch, Inc., expressly stated KBH Ranch, Inc. was negotiating on the basis of its own appraisal report. That report discusses the issues of zoning and governmental regulation extensively, stating in part as follows:* [Emphasis supplied.]

'The property is located in the Clairmont Water District. The superintendent is Mr. Bob Swanson, telephone 503–656–7240. There is a current moratorium on any further water hookups due to lack of supply. Principal source of water for the Clairmont Water District is Oregon City on a "surplus" basis and the State Board of Health has declared there is no further surplus water available. According to Mr. Swanson, the Oregon City filtration plant could be doubled in capacity but would require a bond issue. A proposed tax revision plan for the state of Oregon

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. This is a diversity case and controlled by Oregon law.

2. The magistrate mistakenly referred to KBH Ranch, Inc. as plaintiff's "successor."

was voted down in a special election held May 1, 1973 and the future of many projects including the subject are somewhat clouded at this point in time. There appears every reason to believe that pressures and the demand for land can resolve some of these problems in the foreseeable future. The District is currently drilling a 16″ well and the outcome of this project is not known at this time. 'The property is zoned R–20 permitting single-family residential on minimum lot size 20,000 sq. ft. Any development is subject to percolation tests which must be conducted by the Soil Scientist, Mr. Bill Dolk, located in the Public Works Building at the Clackamas County shops near Oregon City. Determination of subsurface drainage takes precedence over zoning and it is possible that soil tests would require even larger than 20,000 sq. ft. lots.

'The possibility of a sewer district being formed appears remote at this time. The natural drainage would be in the direction of Aurora near the Willamette River which would necessitate formation of a sewer district and pressures for such a development are probably not strong enough to develop an overall sanitary system in the immediate foreseeable future. The Clackamas Community College located just a short distance north of the subject property is connected to the Oregon City sewer system by a pressure line but is exclusive to the institution and not available to other users.

'There is a possibility an individual disposal plant could be developed providing the size of the property would justify the heavy capital outlay presumably with an outfall into Beaver Creek. This possibility should be explored thoroughly by a qualified engineering firm and such a project would be subject to approval of the State Department of Environmental Quality, commonly known as DEQ.

'*In summary, I feel this is a choice parcel for residential development and its total size would certainly suggest a planned unit development which would entail clustering the units in the most attractive area and most suitable for the sanitary system. It is possible one or more of the existing outbuildings could be salvaged for a central recreational area. Negative factors are uncertainty of water supply and sewage disposal.*' [Emphasis supplied.]

"Mr. Hertzberg's admission, coupled with this detailed analysis, demonstrates that KBH Ranch, Inc. could not have acted in justifiable reliance on the alleged misrepresentations by defendants. Thus, an element essential to both of plaintiff's claims is absent.

"In his affidavit submitted in opposition to defendants' motion for summary judgment, Harvey R. Kaufman, president of plaintiff and a former equity holder in KBH Ranch, Inc., states that KBH Ranch, Inc. relied on its own appraisal report *only* as to the existing market value of the property, and relied on the predictions of defendants as to the prospective uses of the property and its potential for high density residential development.

"The specific governmental regulation which allegedly rendered the defendants' predictions erroneous is the comprehensive plan adopted by the Columbia Regional Association of Governments (CRAG) on December 22, 1976, more than 3 years after the alleged fraud and misrepresentation took place.[3] The rule in Oregon is that fraud or misrepresentation cannot be premised upon erroneous predictions or opinions relating to future actions or events such as the conduct of independent third parties. *Cia. Estrella Blanca, Ltda. v. S. S. Nitric,* [sic] 247 F.Supp. 161, 171–172 (D.Or. 1965), *aff'd* 368 F.2d 575 (9th Cir. 1966); *Ball v. Associated Oil Co.,* 151 Or. 383, 390, 50 P.2d 125 (1935).

"For the reasons given above, defendants' motion for summary judgment should be granted and judgment should be entered for defendants on plaintiff's claims. Defendants' motion for summary judgment on

**3.** This was also one month after the plaintiff had gone into default.

their counterclaims should also be granted, and the case be set for a hearing to determine the terms of the decree."

Appellant's arguments to the contrary notwithstanding, the principal claims of appellant are with reference to future actions or events that might occur. The comprehensive plan of the Columbia Regional Association of Governments (CRAG) of which appellant complains was not in force and effect at the time the alleged misrepresentations were made and did not become effective for more than three years after the alleged fraud and misrepresentation had taken place. True enough, appellant strenuously argues that appellees misrepresented the existing regulatory climate. We note, however, that the county in which the property was located did not endorse the CRAG preliminary interim policy statements until some time after the contract for the sale of the property was made and that CRAG did not officially approve its own interim plan until three months after the parties entered their contract. Under Oregon law, opinions or promises as to future actions cannot serve as a basis for fraud or misrepresentation unless it is shown that the party acted in justifiable reliance on the representations. *Cia Estrella Blanca, Ltda. v. S. S. Nictric*, 247 F.Supp. 161, 171–172 (D.Or.1965), *aff'd.* 368 F.2d 575 (CA9 1966); *Ball v. Associated Oil Co.*, 151 Or. 383, 390, 50 P.2d 125 (1935).

A good definition of the elements of fraud in Oregon is stated by us in *Equitable Life & Casualty Co. v. Lee*, 310 F.2d 262, 267 (CA9 1962). The case follows the statement of the Oregon Supreme Court in *Conzelmann v. Northwest Poultry & Dairy Products Co.*, 190 Or. 332, 350, 225 P.2d 757, 764 (1950).

Elements of actual fraud consist of: (1) a misrepresentation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by a person and in a manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) *his reliance on its truth*, (8) *his right to rely thereon*, and (9) his consequent and proximate injury. *Equitable Life & Casualty, supra*, at 267.

It is manifest that appellant did not rely on any representations by appellees regarding the zoning status of the property. Appellant secured the services of a local real estate appraiser and counselor [agent] to examine and determine the value of the property in which it was interested. The agent rendered a thorough report on the factors affecting the value and development of the property, including the existing zoning regulations and the obstacles to development. A letter from the purchaser's attorney clearly indicates that the purchaser was negotiating on the basis of its own agent's evaluation of the property and not on the appellee's representations. Needless to say, any knowledge of the embryonic land-use proposals possessed by this competent agent would be attributed to the purchaser.

Consequently, on the record before us, there could be no "justifiable reliance." It is manifest that appellant's claim of "negligent misrepresentation" would fail for the same reasons that preclude his claim on fraudulent misrepresentations.

This is one of those cases where it would be a complete waste of judicial time to remand for a trial. Where it is apparent at the hearing on the motion for summary judgment that the moving party would be entitled to a directed verdict if the case were to proceed to trial, summary judgment is in order. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 344 (CA9 1978). Viewing all of the evidence before the court and the inferences which might be drawn therefrom in the light most favorable to the appellant, the appellees would be clearly entitled to prevail as a matter of law. *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1279–80 (CA9 1979); *Stansifer v. Chrysler Motor Corp.*, 487 F.2d 59, 63 (CA9 1973). In these circumstances, summary judgment in favor of appellees was proper.

The judgment of the district court must be affirmed.

IT IS SO ORDERED.